# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

Melinda James,

    Plaintiff

v.

David Anthony Alessi,

    Defendant

Case No.: 2:18-cv-01398-JAD-GWF

**Order Granting in Part and Denying in Part Defendant's Motion to Dismiss**

[ECF No. 5]

    In 2015, a jury trial presided over by U.S. District Judge Larry R. Hicks resulted in a judgment in favor of Melinda James (FKA Ellis) and against the law firm Alessi & Koenig (A&K) and related-entity Alessi Trustee Corporation (ATC). The parties stipulated to stay the judgment while the defendants' appeal was pending, and in exchange, James would receive a first deed of trust on a parcel of commercial real estate. But James never received this deed of trust because, as it was later revealed, neither defendant had any interest in the real property.

    James eventually initiated this separate action only against David Anthony Alessi, the managing partner/member of A&K and ATC. She brings state-law contract and tort claims, alleging that Alessi's own conduct breached the parties' stipulated agreement and that she agreed to refrain from enforcing her judgment due to his fraudulent misrepresentation that he controlled the real property. Alessi now moves to dismiss this action, primarily arguing that it is duplicative of the relief sought in the original suit and is thus barred under the doctrine of claim-splitting. But although this action stems from the judgment in the original suit, it seeks relief under different theories of liability for alleged wrongs committed by Alessi personally after that judgment was entered and therefore doesn't constitute claim splitting. However, I grant Alessi's motion to dismiss for failure to state a claim only as to James's fraud claims because she

included many of the pertinent allegations in her briefing rather than in her complaint and has thus failed to plead these claims with particularity. But I grant her leave to amend.

## Background

In 2009, James sued Alessi, A&K, and ATC, claiming that they had violated the Fair Debt Collection Practices Act (FDCPA) and Nevada anti-racketeering law in their attempts to collect on her delinquent Homeowners Association (HOA) assessments.[1] Early in the litigation, the parties stipulated to dismiss Alessi.[2] The case thus proceeded to trial against A&K and ATC only, and a jury found against them and awarded James more than $380,000 in damages.[3] The defendants appealed but failed to post the bond necessary to stay the judgment pending appeal.[4]

The parties eventually agreed that James would refrain from executing upon her judgment during the appeal. In return, A&K promised to provide her a promissory note in the amount of the judgment and to make monthly payments towards the note. It was further agreed that James would "be granted a first priority security interest in the form of a deed of trust against" commercial property located in Las Vegas.[5] The parties submitted the agreement as a stipulation to the court, which approved it.

But James never received the deed of trust. She alleges that, although Alessi personally promised to convey it to her, he later admitted that he never held a controlling interest in the property or the right to grant her a security interest in it.[6] Not long after the parties entered the

---

[1] 3:09-cv-00428, ECF No. 1.
[2] ECF No. 8 at 2 n.1.; 3:09-cv-00428, ECF No. 52.
[3] 3:09-cv-00428, ECF No. 218.
[4] ECF No. 5 at 3; Fed. R. App. P. 8.
[5] ECF No. 1 at 2.
[6] *Id.* at 3; ECF No. 8 at 3–4.

2

stipulated stay of judgment, A&K filed bankruptcy.[7]  Judge Hicks eventually found that the "defendants, including . . . Alessi as the manager/managing partner of A&K and ATC, negotiated the stipulated stay negligently, at a minimum, if not fraudulently."[8]  He therefore vacated his prior order approving the stipulated stay of judgment.[9]

**Discussion**

**I.  This action is not duplicative of the original suit before Judge Hicks.**

Alessi argues that this action should be dismissed because it is duplicative of the original suit before Judge Hicks and therefore constitutes claim splitting.  This doctrine recognizes that "[p]laintiffs generally have no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant."[10]  "To determine whether a suit is duplicative," the Ninth Circuit "borrow[s] from the test for claim preclusion."[11]  Courts must therefore assess whether the suits at issue involve (1) the same parties or privies and (2) the same causes of action and relief sought.[12]

Alessi contends that both suits involved identical parties.[13]  But although the same plaintiff initiated both actions, Alessi was dismissed during the infancy of the original case, which proceeded only against the two entity defendants.  The instant case, conversely, is

---

[7] ECF No. 8 at 4.

[8] *Id*.; 3:09-cv-00428, ECF No. 256 at 3.

[9] 3:09-cv-00428, ECF No. 256.

[10] *Adams v. Cal. Dep't of Health Servs*., 487 F.3d 684, 688 (9th Cir. 2007) (internal quotation marks and citations omitted), *overruled on other grounds by Taylor v. Sturgell*, 553 U.S. 880, 904 (2008).

[11] *Id*.

[12] *Id*. at 689.

[13] ECF No. 5 at 5.

3

exclusively against Alessi based on his alleged personal misconduct surrounding the stay-of-judgment stipulation. The parties to both suits are therefore not identical.

To assess the similarity between causes of action, the Ninth Circuit examines four factors:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.[14]

I begin with the final factor because it is generally "the most important" consideration[15] and, in this instance, provides context for the other factors. Alessi briefly argues that both cases arise out of the same set of facts, highlighting that the first case resulted in the stipulated stay of judgment that, according to the allegations in this action, Alessi personally breached and fraudulently induced James to agree to.[16] But the fact that the first case resulted in the agreement at issue in this case is the only overlap between these two actions. Indeed, the facts of how A&K and ATC violated the FDCPA and Nevada law in their debt-collection activities are irrelevant to determining whether Alessi is liable for his own alleged misconduct resulting in the formation of and failure to abide by the stipulated agreement. So, while this action is certainly a byproduct of the original suit, the causes of action that James is presently pursuing arise from their own unique facts.

---

[14] *Adams*, 487 F.3d at 689 (quoting *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201–02 (9th Cir. 1982)).

[15] *Id*. (quoting *Costantini*, 681 F.2d at 1202).

[16] ECF No. 5 at 6.

Circling back to first factor, Alessi contends that this case, by seeking to establish his personal misconduct and liability, may impair his defense in the original suit. But this argument misconstrues the original suit's procedural history and current posture. Because Judge Hicks vacated his prior order granting the stipulated stay of judgment, James may—once the bankruptcy automatic stay is lifted—attempt to collect on her judgment through enforcement proceedings against A&K and ATC. But that does not alter the fact that Alessi was personally dismissed from the original suit years before judgment was entered and that James therefore may not seek to collect that judgment from him. His individual liability is no longer at issue in the original suit and thus cannot be affected by the outcome of this case. There is thus also no merit to Alessi's argument (in the context of the second factor) that evidence of his lack of personal liability in this case is duplicative of evidence in the original suit.

Finally, the two suits involve the alleged infringement of different rights. Although Alessi seeks to compare his interests at issue in both actions, this factor assesses what rights a plaintiff seeks to vindicate and what relief she seeks to obtain in each suit.[17] In the original suit, James sought (and was awarded) statutory damages against A&K and ATC for their violations of the FDCPA, as well as compensatory and punitive damages for their violations of Nevada's anti-racketeering laws.[18] But in this action, James seeks damages—through Nevada common-law claims sounding in contract and tort—against Alessi for alleged conduct that resulted in her refraining from executing on her judgment for nearly four years and her not having a security

---

[17] *See, e.g.*, *Adams*., 487 F.3d at 691 ("[A]lthough the FCRA and the ICRA establish distinct rights enforceable by litigants, this factor alone does not differentiate the causes of action. . . . Moreover, [the plaintiff] seeks substantially the same relief in both actions—compensatory, exemplary, and punitive damages for the reopening of the background investigation and the withdrawal of her conditional offer of employment, allegedly in violation of her statutory and constitutional rights . . . .").

[18] 3:09-cv-00428, ECF No. 218.

5

interest as an enforcement mechanism. Each suit therefore seeks to vindicate separate legal rights and to redress distinct alleged wrongs. Because all relevant considerations demonstrate that the two suits are not duplicative, I deny Alessi's motion to dismiss for improper claim splitting.

**II.  I grant in part and deny in part Alessi's motion to dismiss for failure to state a claim.**

Alessi next argues that, even if this action is not duplicative of the original suit, James has failed to sufficiently state any claim, and he therefore moves to dismiss under Federal Rule of Civil Procedure 12(b)(6). District courts employ a two-step approach when evaluating a complaint's sufficiency on a Rule 12(b)(6) motion. The court must first accept as true all well-pled factual allegations in the complaint, recognizing that legal conclusions are not entitled to the assumption of truth.[19] Mere recitals of a claim's elements, supported by only conclusory statements, are insufficient.[20] The court must then consider whether the well-pled factual allegations state a plausible claim for relief.[21] A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[22] A complaint that does not permit the court to infer more than the mere possibility of misconduct has "alleged—but not shown—that the pleader is entitled to relief," and it must be dismissed.[23] I address James's contract claims separately from her fraud claim and then turn to her alter-ego theory of liability.

---

[19] *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).
[20] *Id.*
[21] *Id.* at 679.
[22] *Id.*
[23] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

6

### A. Because the stipulation is silent about who was obligated to convey the deed of trust to James, I cannot conclude at this stage that James's contract claims are precluded.

James alleges that Alessi breached the stipulated stay of judgment and the implied covenant of good faith and fair dealing by failing to convey the deed of trust to her.[24] Alessi argues that both claims are infirm because the existence of a valid contract between the parties is an element of both causes of action[25] and that he was not personally a party to the stipulation.[26] He similarly contends that the stipulation imposes no duty on him to perform.

But the stipulation does not preclude the possibility that Alessi was a party to the underlying agreement and was personally obligated to convey the deed of trust to James. Although Alessi was already dismissed from the suit at the time the stipulation was submitted to the court, the document's first line lists him as one of the stipulating parties: "Plaintiff Melinda Ellis and Defendants Alessi Trustee Corporation, *David Anthony Alessi*, and Alessi & Koenig, LLC, by and through their respective counsel, hereby stipulate and agree as follows . . . ."[27] And although the stipulation specifies that A&K was required to issue James a promissory note and make monthly payments against it,[28] the agreement is silent about who was required to convey a

---

[24] ECF No. 1 at 3–4.

[25] *Cohen-Breen v. Gray Television Grp., Inc.*, 661 F. Supp. 2d 1158, 1171 (D. Nev. 2009) ("A claim for breach of contract requires the plaintiff to demonstrate the following elements: (1) the existence of a valid contract; (2) a breach by the defendant; and (3) damages as a result of the breach."); *Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995) (discussing breach of the implied covenant of good faith and fair dealing).

[26] ECF No. 5 at 8–9.

[27] ECF No. 5 at 13 (emphasis added) (copy of stipulation docketed in 3:09-cv-00428 at ECF No. 233).

[28] *Id*. at 14 ¶ 2 ("Defendant Alessi and Koenig, LLC will execute a promissory note for the benefit of Plaintiff and her attorneys . . . ."); *id*. at ¶ 7 ("Defendant Alessi and Koenig, LLC shall make monthly payment to Plaintiff towards the Promissory note . . . .").

7

deed of trust to her: "Plaintiff will also be granted a first priority security interest in the form of a deed of trust against certain real property identified as . . . ."[29] So, at this stage of the litigation, I cannot conclude that the agreement at issue precludes James's contract claims.

Alessi further argues that, even if he was party to the agreement, it is no longer in force because Judge Hicks vacated his order granting the stipulation. Judge Hicks, however, did not declare the agreement void *ab initio* but rather found that the defendants had failed to comply with the stipulation.[30] He therefore vacated his prior order in order to lift the stay of judgment and allow James to execute on it.[31] But that decision has no effect on whether Alessi violated the stipulation while it was still in effect. I therefore deny Alessi's motion to dismiss James's contract claims.

### B. James has failed to plead her fraud claims with particularity but may amend her complaint.

James alleges that Alessi "represented and assured [her] that he would grant [her] a security interest in the form of a deed of trust," that he never intended to convey the deed of trust, and as a result of this misrepresentation, she entered into the stipulated stay of judgment and refrained from collecting on her judgment.[32] James asserts that these acts constitute fraud in the inducement and fraudulent misrepresentation. Alessi argues that the inducement claim fails

---

[29] *Id.* ¶ 4.

[30] *Bergstrom v. Estate of DeVoe*, 854 P.2d 860, 862 (Nev. 1993) ("Rescission is an equitable remedy [that] totally abrogates a contract and [that] seeks to place the parties in the position they occupied prior to executing the contract. . . . Because a rescinded contract is void *ab initio*, following a lawful rescission the 'injured' party is precluded from recovering damages for breach just as though the contract had never been entered into by the parties.").

[31] 3:09-cv-00428, ECF No. 256 at 4.

[32] ECF No. 1 at 3, 5–6.

8

because his alleged promise to convey the deed of trust is contradicted by the stipulation,[33] which he contends places the duty to perform on A&K.[34] But as addressed above, the stipulation is silent as to the deed of trust, so at this stage, I cannot exclude the possibility that it was Alessi who personally promised to convey it. He further argues that the remedy for fraudulent inducement is rescission, which he asserts was already granted once Judge Hicks vacated his order granting the stipulation.[35] But Alessi conflates the equitable claim of fraudulent inducement—which results in rescission—and a legal claim for the damages caused by fraudulent inducement—which James asserts in this action.[36]

Finally, Alessi argues that James failed to plead her fraud allegations with particularity as required under Rule 9(b) because she doesn't specify what he said or when he said it.[37] James counters that, at the time the agreement was reached, Alessi represented "during phone calls and emails" that he had control of the property but, after he failed to perform, later asserted the property was held by another entity.[38] James explains that a non-party LLC was the "title owner

---

[33] *Rd. & Highway Builders v. N. Nev. Rebar*, 284 P.3d 377, 378 (Nev. 2012) ("[W]hen a fraudulent inducement claim contradicts the express terms of the parties' integrated contract, it fails as a matter of law.").

[34] ECF No. 5 at 9–10.

[35] ECF No. 9 at 4.

[36] *Compare Awada v. Shuffle Master, Inc.*, 173 P.3d 707, 713 (Nev. 2007) ("The district court found that rescission was proper in this case because . . . Awada fraudulently induced Shuffle Master to sign the agreement . . . ."), *with J.A. Jones Const. Co. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009, 1017 (Nev. 2004) ("It is the law that one who has been fraudulently induced into a contract may elect to stand by that contract and sue for damages for the fraud. . . . The courts of many states have recognized the rule that a suit on a contract and a suit for fraud in inducing the contract are two different causes of action with separate and consistent remedies." (quoting *Bankers Tr. Co. v. Pac. Emp'rs Ins. Co.*, 282 F.2d 106, 110 (9th Cir. 1960))).

[37] *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

[38] ECF No. 8 at 13.

9

of the real property" at the time the parties entered into the agreement and that Alessi was a member of that LLC.[39] James cites to an affidavit Alessi submitted in the original case in response to a show-cause order that Judge Hicks issued, in which Alessi represented that he had only "reached a tentative agreement to pledge [the] parcel of real property as security against [James's] judgment" and that that side deal eventually fell through.[40] James also quotes from Judge Hicks's resulting order, in which he found that "Alessi himself at least had control of the properties and the ability to pledge them as security on behalf of A&K had the stay been negotiated in good faith. Instead, Alessi and defendants negotiated and drafted the stay for the sole purpose of frustrating James's ability to collect on the judgment."[41]

But none of these allegations appear in James's complaint. Nor does her complaint address the emails and calls she references in her opposition to Alessi's motion or provide details about those conversations. Without this content, her allegations of fraudulent inducement and misrepresentation fail to satisfy Rule 9(b)'s heightened pleading standard. I therefore dismiss James's fraud claims without prejudice and grant her leave to amend her complaint.

**C.  Because James has not relied on an alter-ego theory, I need not address that allegation.**

Finally, Alessi argues that James's alter-ego theory should be dismissed because she merely alleges that he is "a managing member, agent, and alter ego of" A&K.[42] But alter ego is a theory of liability, not a cause of action. Because James's contract and fraud claims, as currently alleged, depend on Alessi's individual misconduct—rather than the theory that he can

---

[39] *Id.* at 3–4.

[40] *Id.* at 45–46 (copy of affidavit docketed in 3:09-cv-00428 at ECF No. 237).

[41] 3:09-cv-00428, ECF No. 256 at 4.

[42] ECF No. 5 at 7; ECF No. 1 at 1–2.

10

be held liable for A&K's acts and omissions—I need not address her alter-ego theory at this time.

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that Alessi's motion to dismiss **[ECF No. 5] is GRANTED in part and DENIED in part**. James's claims for **fraudulent inducement and fraudulent misrepresentation are DISMISSED without prejudice**. She has until June 4, 2019, to file an amended complaint that contains all of the facts on which these claims are based.

Dated: May 24, 2019

_____
U.S. District Judge Jennifer A. Dorsey