MARK J. BOURASSA, ESQ.
Nevada Bar No. 7999
**THE BOURASSA LAW GROUP**
2350 W Charleston, Suite 100
Las Vegas, Nevada 89102
Tel: (702) 851-2180
Fax: (702) 851-2189
Email:  mbourassa@blgwins.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

MELINDA JAMES, an individual,

Plaintiff,

vs.

DAVID ANTHONY ALESSI, an individual

Defendant.

Case No.:  2:18-cv-01398-JAD-CWF

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Melinda James, formerly Melinda Ellis ("Plaintiff"), by and through her attorneys of record, Mark J. Bourassa, Esq. of The Bourassa Law Group, hereby moves this Court for summary judgment as to all of Plaintiff's claims and Defendant's affirmative defenses.

This Motion is based on the attached Memorandum of Points and Authorities, all pleadings and papers on file in this action, and upon such further oral or documentary evidence as may be presented at the time of the hearing in this matter.

DATED this 21st day of January, 2020.

**THE BOURASSA LAW GROUP**

*/s/ Mark J. Bourassa*
MARK J BOURASSA, ESQ.
Nevada State Bar No. 7999
2350 W. Charleston Blvd., #100
Las Vegas, Nevada 89102

*Attorneys for Plaintiff*

- 1 -

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.      INTRODUCTION

3        This case arises from a previous judgment Plaintiff obtained against Alessi and Koenig,

4   LLC (hereinafter "A&K").[1]  In order to avoid Plaintiff's judgment enforcement proceedings,

5   Plaintiff and Defendant David Alessi ("Defendant") agreed that Defendant would provide a security

6   interest in the form of a deed of trust in certain parcels of real property identified as 9512 West

7   Flamingo Road, Suite 100 (APN 163-18-819-016), Suite 101 (APN 163-18-819-07), and Suites

8   102-103 (APN 163-18-819-035) (hereinafter the "Subject Property") as well as monthly payments

9   to avoid judgment enforcement against A&K.[2]  It is undisputed that the security interest was not

10  provided as agreed.[3]

11       On June 4, 2019, Plaintiff filed her First Amended Complaint containing claims for breach

12  of the Agreement, breach of good faith and fair dealing, and fraudulent misrepresentations/fraud in

13  the inducement.[4] On June 17, 2019 Defendant filed an Answer containing nine affirmative defenses:

14
## FIRST AFFIRMATIVE DEFENSE
15       The complaint fails to state a claim upon which relief can be granted
         against the answering defendant.
16

17
## SECOND AFFIRMATIVE DEFENSE
         Plaintiff failed to mitigate her damages.

18
## THIRD AFFIRMATIVE DEFENSE
19       Plaintiff's claims alleged in the Complaint are barred by statute of
         limitations.
20

21
## FOURTH AFFIRMATIVE DEFENSE
         To the extent Defendant's actions violated the law, such actions were
22       the result of a bona fide error notwithstanding reasonable procedures
         designed to avoid such errors.

23
## FIFTH AFFIRMATIVE DEFENSE
24       Plaintiff's claims may be precluded, in whole or part, to the extent
         Plaintiff's purported damages, if any, were caused by Plaintiff's acts
25       and/or omissions.

26  [1] *See* Case No. 3:09-cv-00428-LRH-WCG ("Prior Action") ECF No. 218.
    [2] *See* Agreement, attached hereto as Exhibit "1."
27  [3] *See* David Anthony Alessi's Responses to Plaintiff's First Set of Requests for Admissions,
    Response to Request No. 11, attached hereto as Exhibit "2."
28  [4] *See* ECF No. 25.

- 2 -

**SIXTH AFFIRMATIVE DEFENSE**
Plaintiff's claims may be precluded, in whole or part, to the extent
Plaintiff's purported damages, if any, were caused by third parties
whom the Defendant has no control or authority.

**SEVENTH AFFIRMATIVE DEFENSE**
Plaintiff lacks Article III standing to pursue the allegations in the
Complaint.

**EIGHTH AFFIRMATIVE DEFENSE**
Plaintiff's and/or claims are barred by release, contract provision,
waiver, unclean hands, laches, estoppel and/or res judicata.

**NINTH AFFIRMATIVE DEFENSE**
Plaintiff's contract claims fails for lack of consideration and failure
of consideration.[5]

However, as will be more fully explained below, there is no genuine issue of material fact
for trial with respect to Defendant's breach of the Agreement and Defendant's fraudulent
misrepresentations. Moreover, Defendant cannot meet its burden of proof as to any of the
affirmative defenses alleged.  In considering the below, it should not be lost on the court that
Defendant is a licensed and active attorney with the state of California. Pleading ignorance or
stupidity is no defense.  Accordingly, this Court should grant Plaintiff's Motion for Summary
Judgment as to all of Plaintiff's claims, as well as to the elimination of Defendant's affirmative
defenses.

**II.     STATEMENT OF UNDISPUTED FACTS**

| UNDISPUTED FACTS | PLAINTIFF'S SUPPORT |
|---|---|
| **Prior Action** | |
| 1.  In 2009, Plaintiff filed suit against Alessi & Koenig, LLC ("A&K"), Alessi Trustee Corporation, and Defendant for improper collection of HOA dues. | 1.  See Case No. 3:09-cv-00428-LRH-WCG ("Prior Action") at ECF No. 1. |
| 2.  On July 14, 2015, an amended judgment was filed in Plaintiff's favor, against A&K in the amount of $381,091.04 plus post-judgment interest. | 2.  See Prior Action at ECF No. 218. |

---

[5] See ECF No. 26.

| UNDISPUTED FACTS | PLAINTIFF'S SUPPORT |
|---|---|
| 3.  Defendant is the managing member of the law firm A&K. | 3.  <u>See</u> David Anthony Alessi's Responses to Plaintiff's First Set of Requests for Admissions, Response to Request No. 4, attached hereto as Exhibit "2." |
| **The Agreement** | |
| 4.  In an effort to avoid Plaintiff's judgment enforcement proceedings against A&K pending appeal, Defendant personally proposed to pledge property to be used as a security for the judgment against A&K. | 4.  <u>See</u> Affidavit of David Alessi, attached hereto as Exhibit "3." |
| 5.  On or about November 24, 2015, Plaintiff A&K, and Defendant entered into an agreement regarding a stay of judgment enforcement proceedings pending an appeal, which was reduced to a stipulation and entered as an Order with the Court. | 5.  <u>See</u> Agreement, attached hereto as Exhibit "1" and Order, attached hereto as Exhibit "4;" <u>see also</u> Affidavit of David Alessi, attached hereto as Exhibit "3." |
| 6.  Defendant David Alessi is expressly named as a party to the Agreement, and the Agreement was signed by counsel of all parties, which includes Defendant's own law firm A&K. | 6.  <u>Id.</u> |
| 7.  The express terms of the Agreement were as follows: Plaintiff would cease judgment enforcement proceedings against A&K while A&K appealed the judgment in exchange for:<br>    (1)   First priority security interest in the form of a deed of trust in certain parcels of real property identified as 9512 West Flamingo Road, Suite 100 (APN 163-18-819-016), Suite 101 (APN 163-18-819-07), and Suites 102-103 (APN 163-18-819-035) (the "Subject Property");<br>    (2)   A promissory note executed by A&K in favor of Plaintiff in the amount of $383,990.07 plus interest; and<br>    (3)   Monthly payments by A&K to Plaintiff in the amount of $3,750.00. | 7.  <u>Id.</u> |
| 8.  At the time of the Agreement, the Subject Property referenced in the Agreement, was owned by a separate entity of Defendant's, Profondo, LLC. | 8.  <u>See</u> David Anthony Alessi's Responses to Plaintiff's First Set of Requests for Admissions, Response to Request No. 6, attached hereto as Exhibit "2." |

| UNDISPUTED FACTS | PLAINTIFF'S SUPPORT |
|---|---|
| 9.  Under the Agreement, two payments were made to Plaintiff which came from Lawyers Group, LLP. | 9.  <u>See</u> Payments, attached hereto as Exhibit "5." |
| 10. Lawyers Group, LLP is third company Defendant is a member of, separate from A&K, that he used in an attempt to comply with the Agreement. | 10. <u>See</u> David Alessi's Responses to Plaintiff's First Set of Interrogatories, Response No. 6, attached hereto as Exhibit "6." |
| **Profondo, LLC** | |
| 11. At the time of the Agreement, Defendant was a member of Profondo, LLC with a 98% interest in the company. | 11.  <u>See</u> David Anthony Alessi's Responses to Plaintiff's First Set of Requests for Admissions, Response to Request No. 4, attached hereto as Exhibit "2;"  <u>see also</u> Amended Operating Agreement Profondo LLC, attached hereto as Exhibit "7." |
| 12. The other 2% interest belonged to Defendant's twin sister, Debbie Pike. | 12. *See* Amended Operating Agreement Profondo LLC, attached hereto as Exhibit "7;" *see also* David Alessi's Responses to Plaintiff's First Set of Interrogatories, Response No. 3, attached hereto as Exhibit "6." |
| 13. In 2015 and at the time of the Agreement, Defendant was listed as an owner of Profondo, LLC on the Secretary of State annual list filing. | 13.  <u>See</u> Profondo LLC's Annual List Filing for 2015, attached hereto as Exhibit "8." |
| 14. Defendant, as a member of Profondo, LLC with a 98% interest, had control of and the ability to pledge the Subject Property on behalf of A&K. | 14.  <u>See</u> David Anthony Alessi's Responses to Plaintiff's First Set of Requests for Admissions, Response to Request No. 4, attached hereto as Exhibit "2;"  <u>see also</u> Amended Operating Agreement Profondo LLC, attached hereto as Exhibit "7" |
| 15. As the only party with the ability to pledge the Subject Property, Defendant agreed to pledge the Subject Property in exchange for Plaintiff to cease judgement enforcement against his company A&K during A&K's appeal of Plaintiff's judgment. | 15.  <u>See</u> Agreement, attached hereto as Exhibit "1;"  <u>see also</u> Affidavit of David Alessi, attached hereto as Exhibit "3." |

| UNDISPUTED FACTS | PLAINTIFF'S SUPPORT |
|---|---|
| **Defendant's Breach of the Agreement** | |
| 16. Plaintiff fully performed under the Agreement by ceasing collection efforts during the pendency of the appeal. | 16. Undisputed. |
| 17. Despite Plaintiff's performance, Defendant failed and refused to grant a first priority security interest in the Subject Property. | 17. <u>See</u> David Anthony Alessi's Responses to Plaintiff's First Set of Requests for Admissions, Response to Request No. 11, attached hereto as Exhibit "2." |
| 18. It was not until after the Agreement was reached and signed that Defendant claimed he did not have the ability to pledge the Property. | 18. <u>See</u> Affidavit of David Alessi Esq., attached hereto as Exhibit "3;" <u>see also</u> Declaration of Steve Loizzi, ECF No. 33 at 44. |
| 19. On April 20, 2016, A&K's appeal was dismissed. | 19. <u>See</u> Order, Prior Action ECF No. 240. |
| 20. A&K subsequently filed bankruptcy in December of 2016. | 20. <u>See</u> Bankruptcy Petition, attached hereto as Exhibit "9." |
| 21. Profondo, LLC subsequently sold the Subject Property. | 21. <u>See</u> Grant, Bargain, Sale Deed, attached hereto as Exhibit "10." |
| 22. On September 10, 2018, the prior court issued an order vacating the stay of judgment enforcement proceedings. | 22. <u>See</u> Order dated September 2018 Prior Action ECF No. 256, attached hereto as Exhibit "13." |
| 23. In its order, the judge found that Defendant "negotiated the stay negligently, at a minimum, if not fraudulently." | 23. <u>Id.</u> at 3:21-23. |
| 24. The court further found that "Alessi and defendants negotiated and drafted the stay for the sole purpose of frustrating Ellis's ability to collect on the judgment." | 24. <u>Id.</u> at 4-13-14. |

## III.   STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure, Rule 56 states: "A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6] A fact is "material" if it

---

[6] Fed. R. Civ. P.56(a), (c).

might affect the outcome of a suit, as determined by the governing substantive law.[7]  An issue is "genuine" if sufficient evidence exists such that a reasonable fact finder could find for the non-moving party.[8]  Initially, the moving party bears the burden of proving there is no genuine issue of material fact.[9]  After the moving party meets its burden, the burden shifts to the non-moving party to produce evidence that a genuine issue of material fact remains for trial.[10]

## IV.     LEGAL ARGUMENT

### A.     There Are No Genuine Issues of Material Fact with Respect to Plaintiff's Breach of Contract Claims

Under Nevada law the elements of breach of contract are: (1) a valid contract exists between plaintiff and defendant, (2) defendant failed to perform as required under the contract and was not excused from performance, and (3) Plaintiff was damaged as a result.[11]  Contracts will be construed from their written language and enforced as written.[12]

#### 1.     There is a Valid Contract Between Plaintiff and Defendant

In order for there to be a valid contract, there needs to be "an offer, acceptance, meeting of the minds, and consideration."[13] Consideration may consist of a return promise or forbearance of an act which the party has a legal right to do.[14]

Here, a valid contract exists between Plaintiff and Defendant. The express terms of the Agreement state that "Plaintiff Melinda Ellis and Defendants Alessi Trustee Corporation, **David Alessi**, and Alessi and Koenig, LLC, by and through their respective counsel, hereby stipulate and agree as follows."[15] This express written language shows that Defendant was a named party to the Agreement. Furthermore, Defendant is an attorney and was the managing attorney at the firm that

---

[7] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[8] *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

[9] *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).

[10] *Id.*

[11] *See Cohen-Breen v. Gray Tel. Grp., Inc.*, 661 F.Supp.2d 1158, 1171 (D.Nev. 2009).

[12] *Kaldi v. Farmers*, 117 Nev. 273, 278, 21 P.3d 16, 20 (2011).

[13] *May v. Anderson*, 121 Nev. 668, 672, 119 P.3d 1254, 1257 (2005).

[14] *See Mazzuca v. Fund Ins. Companies*, 90 Nev. 409, 411-12, 528 P.2d 705, 706 (1974) (holding that forbearance from cancelling insurance policy when insurer had legal right to do so was sufficient consideration for modification).

[15] *See* Agreement, attached hereto as Exhibit "1."

1  co-drafted and approved the Agreement.[16] The Agreement was signed by Steve Loizzi of Alessi &

2  Koenig as counsel of all defendants, which includes Defendant as stated in the first paragraph of

3  the Agreement.[17]

4          The express written language of the Agreement further lays out the agreed upon

5  terms between the parties (offer, acceptance, and consideration). Per the Agreement, Plaintiff would

6  cease judgment enforcement proceedings against A&K while A&K appealed the judgment in

7  exchange for:

8      (1)   A first priority security interest in the form of a deed of trust in certain parcels of

9            real property identified as 9512 West Flamingo Road, Suite 100 (APN 163-18-819-

10           016), Suite 101 (APN 163-18-819-07), and Suites 102-103 (APN 163-18-819-035);

11     (2)   A promissory note executed by A&K in favor of Plaintiff in the amount of

12           $383,990.07 plus interest; and

13     (3)   Monthly payments by A&K to Plaintiff in the amount of $3,750.00.[18]

14          This Agreement and the terms of the Agreement are further supported by an Affidavit filed

15  by Defendant on March 18, 2016, whereby he swears under oath that he personally proposed and

16  reached an agreement to pledge parcels of property owned by another one of his companies,

17  Profondo LLC, as a security against the judgment obtained against A&K.[19] Only Defendant had an

18  interest in/ownership of the Subject Property through Profondo, LLC, and therefore only Defendant

19  could perform under this portion of the Agreement, making himself personally liable.[20] A&K had

20  no ownership interest in nor any control over the Subject Property.

21          Additionally, two payments were made under the Agreement to Plaintiff, which came from

22  Lawyers Group, LLP.[21] Lawyers Group, LLP is third company Defendant is a member of, separate

23

24

25  [16] See David Anthony Alessi's Responses to Plaintiff's First Set of Requests for Admissions, Response to Request No. 4, attached hereto as Exhibit "2."
26  [17] Id.
    [18] Id.
27  [19] See Affidavit of David Alessi, attached hereto as Exhibit "3."
28  [20] Id.
    [21] See Payments, attached hereto as Exhibit "5."

from A&K, that he used in an attempt to comply with the Agreement.[22] Therefore, there can be no dispute that Defendant consented to being personally included in the Agreement.

### 2. Defendant Failed to Perform Under the Contract and was Not Excused from Performance

It is undisputed that Defendant failed to perform under the Agreement, by not providing a security interest to Plaintiff.[23]

Additionally, Defendant was not excused from performance. Defendant will attempt to argue that he was excused from performing under the Agreement because he did not have the ability to bind the company. However, the evidence in this case contradicts this defense. It is undisputed that Profondo, LLC owned the Subject Property[24] and Defendant had a 98% membership interest in Profondo, LLC.[25] Defendant has not produced any documents that restrict his 98% interest from binding the company.[26] Moreover, any claim that his twin sister, Debi Pike managing member of Profondo, LLC (2% interest), refused to allow Defendant from performing under the Agreement is wholly unsupported by any evidence. In fact, at her deposition Ms. Pike was unaware of any assets, documents, or financials of Profondo, LLC.[27]

The language of the Nevada Supreme Court in a case involving the effect of a stipulated ruling is particularly instructive as to whether Defendant can be excused from performing under the Agreement:

---

[22] *See* David Alessi's Responses to Plaintiff's First Set of Interrogatories, Response No. 6, attached hereto as Exhibit "6."
[23] *See* David Anthony Alessi's Responses to Plaintiff's First Set of Requests for Admissions, Response No. 11, attached hereto as Exhibit "2."
[24] *See* David Anthony Alessi's Responses to Plaintiff's First Set of Requests for Admissions, Response to Request No. 6, attached hereto as Exhibit "2."
[25] *See* Amended Operating Agreement Profondo LLC, attached hereto as Exhibit "7;" *see also* David Alessi's Responses to Plaintiff's First Set of Interrogatories, Response No. 3, attached hereto as Exhibit "6."
[26] There is an amended operating agreement that grants the managing member authority, but nothing that restricts any other member, particularly a 98% owner. *See* Amended Operating Agreement, attached hereto as Exhibit "7."
[27] The deposition of Debi Pike took place on January 15, 2020; therefore, the official transcript has not been completed. Plaintiff has attached the rough draft of the Deposition of Debi Piker hereto as Exhibit "11."

> The ordinary rule is that a party cannot avail himself of an error to which he has consented, or which has been induced by his own acts when free from misapprehension or mistake.  A party who expressly asks that a designated ruling be made cannot avail himself of that ruling on appeal, although it may be material and may be exhibited by the record.  What a party expressly asks cannot be made available as error without a violation of the plainest principles of justice. *Crosby v. North Bonanza Silver Mining Co.*, 23 Nev. 70, 75, 42 P. 583, 584-585 (1895). (internal quotations omitted).

Although *Crosby* involves an appeal, the justification and reasoning behind the ruling still applies here. Defendant is an attorney, and specifically is an attorney at the firm that co-drafted and approved the Agreement.[28] Defendant personally entered into the stipulated Agreement and cannot escape liability now that he is being held personally accountable for his misrepresentations and failure to perform under the same.

### 3.     Plaintiff was Damaged as a Result of Defendant's Failure to Perform Under the Contract

It is also undisputed that Plaintiff was damaged as a result of Defendant's failure to perform under the Agreement. Prior to the Agreement, Plaintiff engaged in judgment enforcement proceedings against Defendant's company A&K for her $383,990.07 judgment. In an effort to avoid these proceedings, Defendant proposed to offer a security interest in the Subject Property and monthly payments pending A&K's appeal. Instead of providing a security interest, Defendant sold the Subject Property[29] and filed bankruptcy on behalf of A&K,[30] thereby extinguishing any possibility of Plaintiff collecting her judgment. Therefore, Plaintiff was damaged in the amount of $383,990.07 plus post judgment interest.

Therefore, there are no genuine issues of material fact as to Plaintiff's breach of contract claims and summary judgment should be granted in Plaintiff's favor in the amount of $383,990.07 plus post judgment interest.

/ / /

---

[28] *See* Agreement, attached hereto as Exhibit "1;" *see also* David Anthony Alessi's Responses to Plaintiff's First Set of Requests for Admissions, Response to Request No. 4, attached hereto as Exhibit "2."

[29] *See* Grant, Bargain, Sale Deed, attached hereto as Exhibit "10."

[30] *See* Bankruptcy Petition, attached hereto as Exhibit "9."

**B.** **There Are No Genuine Issues of Material Fact with Respect to Plaintiff's Breach of Good Faith and Fair Dealing Claims**

To establish a breach of good faith and fair dealing Plaintiff must prove the following:

1. Plaintiff and Defendant were parties to a contract;

2. Defendant owed a duty of good faith to Plaintiff;

3. Defendants breached that duty by performing in a manner that was unfaithful to the purpose of the contract; and

4. Plaintiff's justified expectations were thus denied.[31]

An implied covenant of good faith and fair dealing exists in every Nevada contract and essentially forbids arbitrary, unfair acts by one party that creates a disadvantage to the other party.[32] Where a defendant deliberately contravenes the intention and spirit of the contract, the defendant can incur liability for the breach of implied covenant of good faith and fair dealing.[33]

Here, the purpose of the Agreement was to stay Plaintiff's judgment enforcement proceedings against Defendant's company A&K pending A&K's appeal.[34] In order to fulfill this purpose, the parties agreed that Plaintiff would cease collection proceedings if Defendant provided a security interest in the Subject Property and made monthly payments.[35] This Agreement was reduced to writing, signed by the parties' attorneys, and entered as an order by the Court.[36] However, despite Defendant's 98% interest in Profondo, LLC (owner of the Subject Property), Defendant failed to provide a security interest in the Subject Property per the Agreement and his original proposal.[37] Subsequently, Defendant sold the Subject Property and filed bankruptcy on behalf of A&K, foreclosing on any possibility of Plaintiff collecting on her judgment.[38] Therefore,

---

[31] *Perry v. Jordan*, 111 Nev. 943, 900 P.2d 335 (1995); *Hilton Hotels v. Butch Lewis Prods.*, 107 Nev. 226, 808 P.2d 919 (1991).

[32] *Frantz v. Johnson*, 116 Nev. 455, 999 P.2d 351 (2000); *see also Consol. Generator-Nevada, Inc. v. Cummins Engine Co.*, 114 Nev. 1304, 971 P.2d 1251 (1998).

[33] *Morris v. Bank of Am. Nevada*, 110 Nev. 1274, 866 P.2d 454 (1994).

[34] *See* Agreement, attached hereto as Exhibit "1."

[35] *Id.*

[36] *Id.*; *see also* Order, attached hereto as Exhibit "4."

[37] *See* David Anthony Alessi's Responses to Plaintiff's First Set of Requests for Admissions, Response to Request No. 11, attached hereto as Exhibit "2."

[38] *See* Bankruptcy Petition, attached hereto as Exhibit "9."

- 11 -

1    Defendant breached the implied duty of good faith and fair dealing.

2          Therefore, there are no genuine issues of material fact as to Plaintiff's breached the implied

3    duty of good faith and fair dealing claims and summary judgment should be granted in Plaintiff's

4    favor.

5          **C.     There Are No Genuine Issues of Material Fact with Respect to Plaintiff's Fraudulent Misrepresentation and Fraud in the Inducement Claims**

6

7          To prevail on a claim for fraudulent misrepresentation, Plaintiff must prove: (1) Defendant

8    made a false representation; (2) Defendant knew or believed his representation was false, or had

9    insufficient basis of information for making the representation; (3) Defendant intended to induce

10   Plaintiff to act or refrain from acting upon misrepresentation; (4) Plaintiff justifiably relied upon

11   Defendant's misrepresentation; and (5) Plaintiff sustained damage.[39] Plaintiff has burden of proving

12   each and every element by clear and convincing evidence.[40] Furthermore, it is well settled under

13   Nevada law, "an individual who commits a tort while acting in the capacity of a corporate officer

14   may be held personally liable."[41]

15                    **1.     Defendant Made False Representations**

16         The suppression or omission of a material fact which a party is bound in good faith to

17   disclose is equivalent to a false representation, since it constitutes an indirect representation that

18   such fact does not exist.[42]

19         By entering into the written Agreement, Defendant represented and assured Plaintiff he (1)

20   had control of the Subject Property; (2) had the ability to perform under the Agreement; and (3)

21   would perform under the Agreement.[43] By his own admission under oath, Defendant admits that he

22   proposed that the Subject Property be used as a security interest to Plaintiff, and that he reached an

23

24   _____

25   [39] *Barmettler v. Reno Air, Inc.*, 114 Nev. 110, 956 P.2d 1382 (1998); *Blanchard v. Blanchard*, 108 Nev. 908, 839 P.2d 1320 (1992).

     [40] *Id.*

26   [41] *Pocahontas First Corp. v. Venture Planning Grp., Inc.*, 572 F. Supp. 503, 508 (D. Nev. 1983);

27   *see also* NRS §78.138(7); *Semenza v. Caughlin Crafted Homes*, 111 Nev. 1089, 901 P.2d 684, 689 (Nev. 1995).

28   [42] *Nelson v. Heer*, 123 Nev. 26, 163 P.3d 420 (2007).

     [43] *See* Agreement, attached hereto as Exhibit "1."

                                        - 12 -

Agreement with Plaintiff to pledge the Subject Property as a security interest.[44] At no time during negotiations did Defendant claim that he had to get permission from his twin sister (2% member of Profondo, LLC) to pledge the Subject Property. It was not until the Agreement was executed and Plaintiff performed under the Agreement that Defendant claimed he did not have the ability to pledge the Subject Property.[45] Defendant admits in his sworn statement that he did not even speak with his sister about this Agreement until February 2016 after the Agreement was already signed and the security instrument was being drafted.[46] There is also no evidence presented to date that Ms. Pike refused to allow the Subject Property be used as a security interest. Therefore, Defendant made a false representation when he stated he would pledge the Subject Property as security interest, as he never had any intention to do so despite having 98% control over the Subject Property and entering into a written Agreement confirming his ability to do so.

### 2. Defendant Knew His Representation was False and/or had Insufficient Basis of Information for Making the Representation

Defendant had full control of the Subject Property at the time of the Agreement, as he was a 98% member of Profondo, LLC with his twin sister holding the other 2%.[47] Defendant did not produce any documents that restrict his ability to bind Profondo, LLC or its assets. Therefore, Defendant had the ability to pledge the Subject Property. However, Defendant entered into the Agreement knowing that despite his representation to Plaintiff that he would pledge the Subject Property as a security interest, he had no intention to do so. On the other hand, if Defendant needed approval from a 2% member of Profondo, LLC, which there is no evidence of, he was without sufficient basis of information to make the representation without consulting with the managing member of Profondo, LLC, which he admitted he did not do until after the Agreement was executed.[48]

/ / /

---

[44] *See also* Affidavit of David Alessi, attached hereto as Exhibit "3."
[45] *See also* Affidavit of David Alessi, attached hereto as Exhibit "3."
[46] *Id.*
[47] *See* Amended Operating Agreement Profondo LLC, attached hereto as Exhibit "7;" *see also* David Alessi's Responses to Plaintiff's First Set of Interrogatories, Response No. 3, attached hereto as Exhibit "6."
[48] *Id.*

1

2

### 3. Defendant Intended to Induce Plaintiff to Refrain from Acting Upon the Misrepresentation

3   Defendant intended to induce Plaintiff from ceasing judgment enforcement proceedings

4   against A&K upon his misrepresentation that he would provide a security interest in the Property.

5   This is evident from Defendant's subsequent activity including selling the Subject Property[49] and

6   filing bankruptcy on behalf of A&K,[50] thereby extinguishing any possibility of Plaintiff collecting

7   her judgment. Plaintiff issued subpoenas to financial institutions and the title company regarding

8   the sale of the Subject Property to track where the proceeds were distributed. Defendant currently

9   has a pending motion for protective order regarding these subpoenas.[51]

10   ### 4. Plaintiff Justifiably Relied on Defendant's Representations

11   It is undisputed that Plaintiff justifiably relied on Defendant's representations, as she

12   performed under the Agreement and ceased judgment enforcement proceedings against A&K.

13   Plaintiff was also justified in relying on Defendant's representations that he would pledge the

14   Subject Property as Defendant was a 98% member of Profondo, LLC[52] and Defendant was listed

15   as the owner on Profondo, LLC's Secretary of State filings for 2015.[53]

16   ### 5. Plaintiff Sustained Damages

17   As stated above in Plaintiff's breach of contract arguments, it is undisputed that Plaintiff

18   suffered damages.

19   Therefore, there are no genuine issues of material fact as to Plaintiff's fraudulent

20   misrepresentation and fraud in the inducement claims and summary judgment should be granted in

21   Plaintiff's favor in the amount of $383,990.07 plus post judgment interest and punitive damages.

22   / / /

23   / / /

24   / / /

25   / / /

26   [49] *See* Grant, Bargain, Sale Deed, attached hereto as Exhibit "10."

27   [50] *See*  Bankruptcy Petition, attached hereto as Exhibit "9."
[51] *See* ECF No. 38.

28   [52] *See* Amended Operating Agreement Profondo LLC, attached hereto as Exhibit "7."
[53] *See* Profondo, LLC Annual List Filings for 2015, attached hereto as Exhibit "8."

### D. Defendant Cannot Maintain His Affirmative Defenses as a Matter of Law

It is well settled that a defendant bears the burden of proving its affirmative defenses.[54] This burden does not suddenly attach at trial. Discovery has been completed in this case, and Defendant has had the opportunity to discover any and all evidence supporting his defenses. If Defendant cannot produce that evidence now, then it is axiomatic that it will be unable to do so at trial. In the interest of narrowing the issues to be tried and judicial efficiency, it is appropriate to test the sufficiency of those defenses now through summary judgment. As will be more fully explained below, Defendant has not provided any evidence in support of these defenses. Therefore, Defendant has not met its burden,[55] and summary judgment is appropriate.

#### 1. First Affirmative Defenses – Failure to State a Claim

This defense was already challenged at the initiation of the lawsuit. On August 31, 2018, Defendant filed a motion to dismiss all of Plaintiff's claims for failure to state a claim.[56] On May 24, 2019, this Court entered an Order denying the motion as to Plaintiff's breach of contract claims and granting the motion as to Plaintiff's fraud claims with leave to amend such claims for further factual support.[57] Plaintiff amended her fraud claims on June 4, 2019 with further factual support for her fraud claims.[58] Thus, summary judgment is appropriate as to this defense.

#### 2. Second Affirmative Defense – Plaintiff Failed to Mitigate Damages

Defendant's second affirmative defense, plaintiff failed to mitigate her damages, likewise fails as a matter of law. Defendant has produced no evidence that Plaintiff had an opportunity to mitigate her damages but failed to do so. Although Defendant testified that he offered to give his company's business to Plaintiff's counsel, who in turn would have had to defend numerous HOA

---

[54] *Nevada Ass'n Servs., Inc. v. Eighth Jud. Dist. Ct.*, 130 Nev. Adv. Op. 94, 338 P.3d 1250, 1254 (2014), reh'g denied (Mar. 23, 2015) (*citing Schwartz v. Schwartz*, 95 Nev. 202, 206 n. 2, 591 P.2d 1137, 1140 n. 2 (1979) (stating that a defendant bears the burden of proving each element of an affirmative defense)).

[55] "[T]he nonmoving party must transcend the pleadings and, by affidavit or other admissible evidence, introduce specific facts that show a genuine issue of material fact." *Cuzze v. Univ. & Cmty. Coll. Sys. of Nevada*, 123 Nev. 598, 603, 172 P.3d 131, 134 (2007); *Wood v. Safeway, Inc*., 121 Nev. 724, 732, 121 P.3d 1026, 1031 (2005).

[56] *See* ECF No. 5.

[57] *See* ECF No. 24.

[58] *See* ECF No. 25.

1  lawsuits involving over 500 depositions, however this was not an offer that would have brought

2  any monetary gain to Plaintiff.[59] Thus, summary judgment is appropriate as to this defense.

3  **3.     Third Affirmative Defense – Statute of Limitations**

4  Defendant's third affirmative defense, statue of limitations, fails as a matter of law. The

5  parties entered into a written Agreement on November 24, 2015, which was entered as an Order on

6  December 16, 2015. Plaintiff filed her complaint for breach of contract and fraud claims on July 7,

7  2018. The statute of limitations in Nevada on contract claims is six years,[60] while the statute of

8  limitations on a fraud claims is three years.[61] Plaintiff filed her complaint less than three years after

9  the Agreement was entered into, therefore Plaintiff's claims are well within the statute of

10  limitations. Furthermore, Defendant also testified that he had no factual basis for the third

11  affirmative defense and cannot meet its burden of proof.[62] Thus, summary judgment is appropriate

12  with respect to this defense.

13  **4.     Fourth Affirmative Defense – Bona Fide Error**

14  A bona fide error is defined as "a violation that is unintentional and occurs despite

15  procedures reasonably adapted to avoid any such error."[63] Defendant admitted under sworn

16  declaration that he was the managing member of A&K and a member Profondo when he personally

17  proposed and  reached an agreement to pledge the Subject Property in exchange for Plaintiff to

18  ceased collection enforcement proceedings of her judgment.[64] Profondo's managing member and

19  only other member was Defendant's twin sister Debi Pike, who had only a 2% interest in Profondo

20  compared to Defendant's 98% interest.[65] In fact, Debi Pike testified that she did not even know

21  what assets Profondo possessed.[66] There is no evidentiary support that it was a bona fide error that

22  Defendant could not provide security interest in the Subject Property. Defendant also testified that

---

[59] *See* Deposition of David Alessi at 73:2-22, attached to hereto as Exhibit "12."
[60] NRS 11.190(1)
[61] NRS 11.190(3).
[62] *See* Deposition of David Alessi at 76:9-22, attached to hereto as Exhibit "12"
[63] *See* ERROR, Black's Law Dictionary (11th ed. 2019).
[64] *See* Affidavit of David Alessi, attached hereto as Exhibit "3."
[65] *See* Amended Operating Agreement Profondo LLC, attached hereto as Exhibit "7."
[66] The deposition of Debi Pike took place on January 15, 2020; therefore, the official transcript has not been completed. Plaintiff has attached the rough draft of the Deposition of Debi Piker hereto as Exhibit "11."

- 16 -

he did not know of any reasonable procedures in place to prevent such an error.[67] Therefore, Defendant has not met his burden of proof and summary judgment is appropriate with respect to this defense.

### 5.        Fifth Affirmative Defense – Plaintiff's Own Acts and/or Omissions

Defendant's fifth affirmative defense, Plaintiff's damages were caused by Plaintiff's own acts or omissions, has no factual  support and fails as a matter of law. During Defendant's deposition, he could not point to any specific fact to support this defense and therefore cannot meet his burden of proof.[68]

### 6.        Sixth Affirmative Defense – Causation of Third Parties

Defendant's sixth affirmative defense, causation by third parties over whom Defendant has no control, likewise fails a matter of law. Essentially, Defendant contends that he is not responsible for the acts of non-parties. NRS §41.141(b)(2) allows a jury to return a verdict "indicating the percentage of negligence attributable to each party remaining in the action."  NRS §41.151(b)(2) therefore "prevents admission of evidence in support of a 'comparative fault' or apportionment analysis of the case as to *nonparties*, and a jury may only 'compare' the negligence as between parties and nonparties."[69]  Defendant has had adequate opportunities to bring claims against any potentially responsible party in this litigation. If a person or entity other than the parties involved herein was or could be responsible for Plaintiff's damages, Defendant should have brought appropriate claims against said parties.  To the extent that it did not, Defendant may not now be allowed to point to an "empty chair" in their defense of this litigation as a way to apportion its liability.  Furthermore, Defendant also testified that he had no factual basis for the sixth affirmative defense and cannot meet its burden of proof.[70]  Thus, summary judgment is appropriate with respect to this defense.

### 7.        Seventh Affirmative Defense – Article III Standing

Defendant's seventh affirmative defense, Article III standing, is not supported by

---

[67] *See* Deposition of David Alessi at 74:16-12, attached to hereto as Exhibit "12."
[68] *See* Deposition of David Alessi at 75:13-76:16, attached to hereto as Exhibit "12."
[69] *Banks ex rel. Banks v. Sunrise Hosp.*, 120 Nev. 822, 844, 102 P.3d 52, 67 (2004), *see also Phillips v. C.R. Bard, Inc.*, No. 3:12-CV-00344-RCJ, 2015 WL 260873, at *4 (D. Nev. Jan. 21, 2015).
[70] *See* Deposition of David Alessi at 76:9-22, attached to hereto as Exhibit "12."

Defendant's own admissions in this matter and therefore fails a matter of law. For a dispute to be within the power (the subject-matter jurisdiction) of a federal court, the plaintiff must have standing—that is, the plaintiff must have alleged a sufficient interest in the dispute.  This "irreducible constitutional minimum" of standing has three elements: (1) the plaintiff has suffered a concrete injury; (2) that injury is fairly traceable to actions of the defendant; and (3) it must be likely—not merely speculative—that the injury will be redressed by a favorable decision.[71]

Here, Plaintiff has alleged a sufficient interest against Defendant and has produced evidence to support the same. Plaintiff entered into a written Agreement with Defendant and the written Agreement specifically identifies Defendant by name.[72] By Defendant's own admission, Defendant breached that agreement by not providing a security interest to Plaintiff[73] causing monetary injury to Plaintiff in the amount of $383,990.07. A favorable decision by the jury will redress Plaintiff's injury by monetarily putting her in a position that she was in before entering into the Agreement with Defendant. Furthermore, Defendant also testified that he had no factual basis for the sixth affirmative defense and cannot meet its burden of proof.[74]  Therefore, summary judgment is appropriate with respect to this defense.

**8.**      **Eighth Affirmative Defense – Release, Contract Provision, Waiver, Unclean Hands, Laches, Estoppel and/or Res Judicata**

With respect to his eighth affirmative defense for release, contract provision, unclean hands, laches, estoppel, and/or res judicata, Defendant testified that he has no factors or evidence to support this defense.[75] Defendant has also not produced any other evidence in support of this defense.  Thus, summary judgment is appropriate as to this defense.

**9.**      **Ninth Affirmative Defense – Lack of Consideration**

Defendant's ninth affirmative defense, lack of consideration, likewise fails a matter of law. The evidence presented in this case demonstrates consideration. Consideration may consist of a

[71] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

[72] *See* Agreement, attached hereto as Exhibit "1;" *see also* Affidavit of David Alessi at ₱6-7, attached hereto as Exhibit "3."

[73] *See* David Anthony Alessi's Responses to Plaintiff's First Set of Requests for Admissions, Response No. 11, attached hereto as Exhibit "2."

[74] *See* Deposition of David Alessi at 76:23-77:5, attached to hereto as Exhibit "12."

[75] *See* Deposition of David Alessi at 77:6-17, attached to hereto as Exhibit "12."

return promise or forbearance of an act which the party has a legal right to do.[76] The terms of the Agreement were that Defendant would pledge the Subject Property as a security interest for the judgment obtained against A&K and make monthly payments of $3,750.00 to Plaintiff in exchange for Plaintiff ceasing judgment enforcement proceedings against A&K.[77] Defendant is the managing member of A&K, and also a member of Profondo LLC, which was the owner of the Property offered by Defendant (provided consideration) in exchange for ceasing judgment enforcement against A&K during A&K appeal (received consideration).[78] It is undisputed that Plaintiff ceased judgment enforcement proceedings against A&K during the appeal. Additionally, two payments were made under the Agreement to Plaintiff, which came from Lawyers Group, LLP.[79] Lawyers Group, LLP is third company Defendant is a member of, separate from A&K, that he used in an attempt to comply with the Agreement.[80] Additionally, also testified that he had no factual basis for the sixth affirmative defense and cannot meet its burden of proof.[81] Thus, summary judgment is appropriate as to this defense.

## V.    CONCLUSION

Based on the foregoing, Plaintiff respectfully requests this Court to deny Defendant's Motion for Protective Order and permit the requested discovery.

DATED this 21st day of January 2020.

**THE BOURASSA LAW GROUP**

*/s/ Mark J. Bourassa*
MARK J BOURASSA, ESQ.
Nevada State Bar No. 7999
2350 W. Charleston Blvd., #100
Las Vegas, Nevada 89102
*Attorneys for Plaintiff*

---

[76] *See Mazzuca v. Fund Ins. Companies*, 90 Nev. 409, 411-12, 528 P.2d 705, 706 (1974) (holding that forbearance from cancelling insurance policy when insurer had legal right to do so was sufficient consideration for modification).
[77] *See* Agreement, attached hereto as Exhibit "1."
[78] *See* David Anthony Alessi's Responses to Plaintiff's First Set of Requests for Admissions, Response to Request No. 3 and Response to Request No. 4, attached hereto as Exhibit "2."
[79] *See* Payments, attached hereto as Exhibit "5."
[80] *See* David Alessi's Responses to Plaintiff's First Set of Interrogatories, Response No. 6, attached hereto as Exhibit "6."
[81] *See* Deposition of David Alessi at 77:18-78:2, attached to hereto as Exhibit "12."

## <u>DECLARATION OF VALERIE S. GRAY, ESQ. IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>

Valerie S. Gray, Esq., being first duly sworn deposes and says:

1.      I, Valerie S. Gray, Esq, have actual knowledge as to the matters stated herein, except for those matters stated on information and belief, and as to those matters, I believe them to be true.

2.      I am an attorney, duly licensed to practice before all of the Courts of the State of Nevada and am an attorney at the law firm of The Bourassa Law Group.

3.      The Bourassa Law Group is counsel of record for Plaintiff MELINDA JAMES ("Plaintiff") in the above captioned matter.

4.      This Declaration is being served in compliance with FRCP 56 and pertains to Plaintiff's Motion for Summary Judgment.

5.      A true and correct copy the Agreement is attached hereto as Exhibit "1."

6.      I have no reason to believe that the document attached as Exhibit "1" is anything but a true and correct copy of the Agreement.

7.      A true and correct copy of David Anthony Alessi's Responses to Plaintiff's First Set of Requests for Admission is attached hereto as Exhibit "2."

8.      I have no reason to believe that the document attached as Exhibit "2" is anything but a true and correct copy of David Anthony Alessi's Responses to Plaintiff's First Set of Requests for Admission.

9.      A true and correct copy the Affidavit of David Alessi is attached hereto as Exhibit "3."

10.      I have no reason to believe that the document attached as Exhibit "3" is anything but a true and correct copy of the Affidavit of David Alessi.

11.      A true and correct copy the Order is attached hereto as Exhibit "4."

12.      I have no reason to believe that the document attached as Exhibit "4" is anything but a true and correct copy of the Order.

13.      A true and correct copy of the Payments is attached hereto as Exhibit "5."

14.     I have no reason to believe that the document attached as Exhibit "5" is anything but a true and correct copy of the Payments.

15.     A true and correct copy of David Anthony Alessi's Responses to Plaintiff's First Set of Requests Interrogatories is attached as Exhibit "6."

16.     I have no reason to believe that the document attached as Exhibit "6" is anything but a true and correct copy of the David Anthony Alessi's Responses to Plaintiff's First Set of Requests Interrogatories.

17.     A true and correct copy of the Amended Operating Agreement of Profondo, LLC is attached hereto as Exhibit "7."

18.     I have no reason to believe that the document attached as Exhibit "7" is anything but a true and correct copy of the Amended Operating Agreement of Profondo, LLC.

19.     A true and correct copy of Profondo, LLC's Annual List Filing for 2015 is attached as Exhibit "8."

20.     I have no reason to believe that the document attached as Exhibit "8" is anything but a true and correct copy of Profondo, LLC's Annual List Filing for 2015.

21.     A true and correct copy of the Bankruptcy Petition is attached hereto as Exhibit "9."

22.     I have no reason to believe that the document attached as Exhibit "9" is anything but a true and correct copy of the Bankruptcy Petition.

23.     A true and correct copy of the Grant, Bargain, Sale Deed is attached hereto as Exhibit "10."

24.     I have no reason to believe that the document attached as Exhibit "10" is anything but a true and correct copy of the Grant, Bargain, Sale Deed.

25.     A true and correct copy of Debi Pike's Deposition rough draft transcript is attached hereto as Exhibit "11."

26.     I have no reason to believe that the document attached as Exhibit "11" is anything but a true and correct copy of Debi Pike's Deposition rough draft transcript.

1    27.    A true and correct copy of Defendant David Alessi's deposition, pages 73-78 are

2    attached hereto as Exhibit "12."

3    28.    I have no reason to believe that the documents attached as Exhibit "12" are anything

4    but a true and correct copy of Defendant David Alessi's deposition, pages 73-78.

5    29.    A true and correct copy of the Order from Prior Action dated September 2018 is

6    attached hereto as Exhibit "13."

7    30.    I have no reason to believe that the documents attached as Exhibit "13" are anything

8    but a true and correct copy of Order from Prior Action dated September 2018.

9    I declare under penalty of perjury that the foregoing is true and correct.

10

11    _/s/ Valerie S. Gray_
      VALERIE S. GRAY, ESQ.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2

The undersigned hereby certifies that the foregoing **PLAINTIFF'S MOTION FOR**

3

**SUMMARY JUDGMENT** was electronically filed this 21st day of January 2020, and is available

4

for viewing and downloading from the ECF System of the United States District Court for the

5

District of Nevada by the following parties:

6

7
Frank C. Gilmore, Esq.
Cody Oldham, Esq.

8
ROBINSON, SHARP, SULLIVAN & BRUST
71 Washington Street

9
Reno, Nevada 89503

10

11

12
_/s/ Valerie Gray_____
An employee of The Bourassa Law Group

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "1"
## Agreement

# EXHIBIT "1"
## Agreement

MARK J. BOURASSA, ESQ.
Nevada Bar No. 7999
TRENT L. RICHARDS, ESQ.
Nevada Bar NO. 11448
**THE BOURASSA LAW GROUP, LLC**
8668 Spring Mountain Rd.  Suite 101
Las Vegas, Nevada 89117
Telephone: (702) 851-2180
Facsimile: (702) 851-2189
mbourassa@bourassalawgroup.com
trichards@bourassalawgroup.com
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

|  |  |
|---|---|
| MELINDA ELLIS,<br><br>             Plaintiff,<br><br>       v.<br><br>ALESSI TRUSTEE CORPORATION;<br>DAVID ANTHONY ALESSI; and<br>ALESSI & KOENIG, LLC.,<br><br>             Defendants. | Case No.:  3:09-cv-00428-LRH-WGC<br><br>**STIPULATION REGARDING<br>JUDGMENT ENFORCEMENT** |

Plaintiff Melinda Ellis and Defendants Alessi Trustee Corporation, David Anthony Alessi, and Alessi & Koenig, LLC, by and through their respective counsel, hereby stipulate and agree as follows:

WHEREAS, on July 14, 2015, the Court entered an Amended Judgment in a Civil Case [Docket No. 218];

WHEREAS, Defendants filed a Notice of Appeal to United States Court of Appeals for the Ninth Circuit on February 27, 2015 [Docket No. 220];

- 1 -

WHEREAS, the appeal of the judgment entered against Defendants was assigned case number 15-16493 by the United States Court of Appeals for the Ninth Circuit;

WHEREAS, Defendants have not filed a supercedeas bond with the Court so as to stay enforcement of the judgment entered against them; and

WHEREAS, the Plaintiff and Defendants have otherwise reached an agreement to stay enforcement proceedings pursuant to the terms herein.

THEREFORE, the parties hereby stipulate and agree as follows:

1.    Plaintiff will refrain from further judgment enforcement proceedings against Defendant Alessi and Koenig, LLC;

2.    Defendant Alessi and Koenig, LLC will execute a promissory note for the benefit of Plaintiff and her attorneys;

3.    The promissory note shall be in the amount of the judgment as entered against Defendant Alessi and Koenig, LLC in the amount of Three Hundred Eighty-Three Thousand Nine Hundred Ninety Dollars and Seven Cents ($383,990.07), plus interest;

4.    Plaintiff will also be granted a first priority security interest in the form of a deed of trust against certain real property identified as 9512 West Flamingo Road, Suite 100 (APN 163-18-819-016), Suite 101 (APN 163-18-819-017), and Suites 102-103 (APN 163-18-819-035);

5.    The deed of trust shall be in the amount of the judgment as entered against Defendant Alessi and Koenig, LLC in the amount of Three Hundred Eighty-Three Thousand Nine Hundred Ninety Dollars and Seven Cents ($383,990.07), plus interest.

6.    Interest will be calculated at the federal statutory rate as awarded in the Judgment.

7.    Defendant Alessi and Koenig, LLC shall make monthly payment to Plaintiff towards the Promissory note in the amount of Three Thousand Seven Hundred Fifty Dollars ($3,750.00) (the "Monthly Payment").

- 2 -

8.      The Monthly Payment will be applied first to interest on the promissory note, then to principal.

9.      The promissory note shall become due and payable in full sixty (60) days after the final order regarding the disposition of the appeal;

10.     Defendant Alessi and Koenig, LLC shall be deemed in default of the promissory note if any Monthly Payment is unpaid for a period of 15 days, or if the promissory note is not paid in full within 15 days of it becoming due.

11.     Plaintiff and her counsel are entitled to their attorney fees and costs incurred in any enforcement or foreclosure proceedings relating to the promissory note and/or the deed of trust.

12.     In the event that Defendant Alessi and Koenig prevails on the appeal, Plaintiff and her counsel shall retain all payments made without recourse by Defendant Alessi and Koenig.

13.     Upon execution of this agreement, all collection efforts against Alessi and Koenig shall immediately cease and any existing or pending writs of execution or possession shall be recalled and terminated. Any funds collected from Alessi and Koenig after the execution of this stipulation shall be promptly returned.

DATED this 23rd day of October 2015          DATED this 10th day of October 2015

THE BOURASSA LAW GROUP, LLC                 ALESSI & KOENIG, LLC


MARK J. BOURASSA, ESQ.                       STEVE LOIZZI, JR., ESQ
Nevada Bar No. 7999                          Nevada Bar No.
TRENT L. RICHARDS, ESQ.                      9500 W. Flamingo Road, Ste. 101
Nevada Bar No. 11448                         Las Vegas, Nevada 89147
8668 Spring Mountain Rd.  Suite 101          Telephone: (702) 222-4033
Las Vegas, Nevada 89117                      Facsimile: (702) 222-4043
Telephone: (702) 851-2180                    *Attorneys for Defendants*
Facsimile: (702) 851-2189
mbourassa@bourassalawgroup.com
trichards@bourassalawgroup.com
*Attorneys for Plaintiff*

# EXHIBIT "2"

## David Anthony Alessi's Responses to Plaintiff's First Set of Requests for Admission

# EXHIBIT "2"

## David Anthony Alessi's Responses to Plaintiff's First Set of Requests for Admission

1     FRANK C. GILMORE, ESQ. – NSB #10052
      fgilmore@rssblaw.com
2     CODY M. OLDHAM, ESQ. – NSB #14594
      coldham@rssblaw.com
3     Robison, Sharp, Sullivan & Brust
      71 Washington Street
4     Reno, Nevada 89503
      Telephone:     (775) 329-3151
5     Facsimile:      (775) 329-7169
      *Attorneys for Defendant David*
6     *A. Alessi*

7

8              **UNITED STATES DISTRICT COURT**

9                 **DISTRICT OF NEVADA**

10

11     MELINDA JAMES,                    Case No.: 2:18-cv-01398-JAD-CWF

12                Plaintiff,

13     vs.                                 **DAVID ANTHONY ALESSI'S**
                                      **RESPONSES TO PLAINTIFF'S**
14     DAVID ANTHONY ALESSI, an individual    **FIRST SET OF REQUESTS FOR**
                                      **ADMISSION**
15                Defendant.

16    _____/

17         **COMES NOW**, Defendant, DAVID ANTHONY ALESSI (hereinafter referred to as

18 "Respondent"), by and through his attorney of record, and hereby objects and responds to Plaintiff,

19 MELINDA JAMES's ("Plaintiff") First Set of Requests for Admission as follows:

20                   **PRELIMINARY STATEMENT**

21         These responses and objections are not intended to be, and should not be interpreted as, a

22 waiver of any objection to the admissibility of any such information on the grounds of privilege,

23 work product doctrine, hearsay, relevance or any other objection.

24         Additionally, Respondent objects to each request for admission to the extent that it calls

25 for information protected by attorney-client privilege and/or work product doctrine. Any

26 inadvertent disclosure of information protected by the aforementioned privileges, or any other

27 applicable privileges and/or immunities recognized by statute or case law shall not be deemed a

28 waiver of the privilege/immunity.

Finally, these responses are based solely on information presently known to Respondent. Further discovery may lead to additions to, changes in, or modifications of these responses.

Accordingly, these responses are being given without prejudice to Respondent's right to produce subsequent discovery evidence and to introduce the same at trial.

**REQUEST FOR ADMISSION NO. 1:**

Admit that the signature on page 4 of Exhibit "1" is your signature.

**RESPONSE TO REQUEST NO. 1:**

Admit.

**REQUEST FOR ADMISSION NO. 2:**

Admit that you signed Exhibit "1" under penalty of perjury.

**RESPONSE TO REQUEST NO. 2:**

Admit.

**REQUEST FOR ADMISSION NO. 3:**

Admit that between September 2015 and March 0f 2016 you were a member of Profondo, LLC.

**RESPONSE TO REQUEST NO. 3:**

Admit.

**REQUEST FOR ADMISSION NO. 4:**

Admit that between September 2015 and March of 2016 you were a managing member of Alessi & Koenig, LLC.

**RESPONSE TO REQUEST NO. 4:**

Admit in part that Respondent was a member, but lacks recollection of whether Respondent was a "managing member" during the specific period referenced.

**REQUEST FOR ADMISSION NO. 5:**

Admit that Debbie Pike is your relative.

**RESPONSE TO REQUEST NO. 5:**

Admit.

**REQUEST FOR ADMISSION NO. 6:**

1   Admit that Profondo, LLC had an ownership interest in the Subject Property.

2   **RESPONSE TO REQUEST NO. 6:**

3   Admit.

4   **REQUEST FOR ADMISSION NO. 7:**

5   Admit that you initiated the proposal to Plaintiff that you would pledge the Subject

6   Property as a security interest for the judgment obtained against Alessi & Koenig, LLC.

7   **RESPONSE TO REQUEST NO. 7:**

8   Deny.

9   **REQUEST FOR ADMISSION NO. 8:**

10   Admit that you reached a tentative agreement with Plaintiff to pledge the Subject Property

11   as a security interest in the form of a deed of trust against the judgment that Plaintiff obtained

12   against Alessi & Koenig, LLC in Case No. 3:09-cv-00428 and to make monthly payments to

13   Plaintiff in the amount of $3,750.00.

14   **RESPONSE TO REQUEST NO. 8:**

15   Deny.

16   **REQUEST FOR ADMISSION NO. 9:**

17   Admit that the tentative agreement referenced in Request No. 6 was reduced to a

18   Stipulation and Order signed by the court.

19   **RESPONSE TO REQUEST NO. 9:**

20   Deny.

21   **REQUEST FOR ADMISSION NO. 10:**

22   Admit that you made two payments in the amount of $3,750.00 to Plaintiff.

23   **RESPONSE TO REQUEST NO. 10:**

24   Deny.

25   **REQUEST FOR ADMISSION NO. 11:**

26   Admit that you never gave Plaintiff a security interest in the Subject Property.

27   **RESPONSE TO REQUEST NO. 11:**

28   Admit.

Robison, Sharp,
Sullivan & Brust
71 Washington St.
Reno, NV 89503
(775) 329-3151

**REQUEST FOR ADMISSION NO. 12:**

Admit that between September of 2015 and October of 2015 Tom Bayard was your attorney and was authorized to negotiate an agreement on your behalf to stay judgment enforcement proceedings against Alessi & Koenig, LLC, including offering the Subject Property as a security interest.

**RESPONSE TO REQUEST NO. 12:**

Deny.

**REQUEST FOR ADMISSION NO. 13:**

Admit that you authorized Tom Bayard to make representations to Plaintiff's counsel that you had ownership and control over the Subject Property.

**RESPONSE TO REQUEST NO. 13:**

Deny.

**REQUEST FOR ADMISSION NO. 14:**

Admit that for the filing year of March 2015 through March 2016, you signed Profondo LLC's Nevada Secretary of State filing as owner.

**RESPONSE TO REQUEST NO. 14:**

Respondent lacks sufficient information or knowledge to admit or deny the request, and as such, denies the same.

**REQUEST FOR ADMISSION NO. 15:**

Admit that you did not have the ability to encumber the Subject Property.

**RESPONSE TO REQUEST NO. 15:**

Admit, and clarify that Respondent was without sufficient knowledge or information at the relevant period referenced as to whether or not such an ability might exist.

**REQUEST FOR ADMISSION NO. 16:**

Admit that in September of 2015 and October of 2015 you knew that you did not have the ability encumber the Subject Property.

**RESPONSE TO REQUEST NO. 16:**

Deny, and clarify that Respondent was without sufficient knowledge or information at the

relevant period referenced as to whether or not such an ability might exist.

**REQUEST FOR ADMISSION NO. 17:**

Admit that you did not disclose to Plaintiff that you did not have the ability to encumber the Subject Property until February of 2016.

**RESPONSE TO REQUEST NO. 16:**

Admit, and clarify that Respondent was without sufficient knowledge or information at the relevant period referenced as to whether or not such an ability might exist..

DATED this _6th_ day of September, 2019.

ROBISON, SHARP, SULLIVAN & BRUST
71 Washington Street
Reno, Nevada 89503

FRANK C. GILMORE, ESQ. – NSB #10052
CODY M. OLDHAM, ESQ. – NSB #14594
Attorneys for Defendant David A. Alessi

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I certify that I am an employee of Robison, Sharp, Sullivan & Brust, and that on this date I caused to be served a true copy of **DAVID ANTHONY ALESSI'S RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION** on all parties to this action by the method(s) indicated below:

✓ by placing an original or true copy thereof in a sealed envelope, with sufficient postage affixed thereto, in the United States mail at Reno, Nevada, addressed to:

        Mark J. Bourassa, Esq.
        The Bourassa Law Group
        2350 W Charleston Blvd., Suite 100
        Las Vegas Nv 89102

_____ by using the Court's CM/ECF Electronic Notification System addressed to:

        Mark J. Bourassa, Esq.
        Email: mbourassa@blgwins.com

_____ by placing an original or true copy thereof in a sealed envelope for personal delivery/hand delivery of original addressed to:

        Mark J. Bourassa, Esq.
        The Bourassa Law Group
        2350 W Charleston Blvd., Suite 100
        Las Vegas Nv 89102

_____ by facsimile (fax) addressed to:

_____ by Federal Express/UPS or other overnight delivery addressed to:

DATED: This _6th_ day of September, 2019.

                        _Mary Carroll Davis_____
                      Employee of Robison, Sharp, Sullivan & Brust

Robison, Sharp,
Sullivan & Brust
71 Washington St.
Reno, NV 89503
(775) 329-3151

# EXHIBIT "3"

## Affidavit of David Alessi

# EXHIBIT "3"

## Affidavit of David Alessi

Steven T. Loizzi, Esq. (NV SBN 10920)
ALESSI & KOENIG, LLC
9500 W. Flamingo, Suite 205
Las Vegas, Nevada 89147
Phone: (702) 222-4033
Fax:    (702) 254-9044
Attorney for Defendants

# UNITED STATES FEDERAL DISTRICT COURT

## FOR THE DISTRICT OF NEVADA - NORTHERN DIVISION

| | |
|---|---|
| MELINDA ELLIS, individually and on behalf of all others similarly situated | Case No. 3:09-cv-00428 |
| Plaintiff, | **AFFIDAVIT OF DAVID ALESSI ESQ. IN SUPPORT OF OPPOSITION TO MOTION FOR ORDER TO SHOW CAUSE FOR FAILURE TO COMPLY WITH ORDER GRANTING STIPULATION RE JUDGMENT ENFORCEMENT** |
| vs. | |
| ALESSI TRUSTEE CORPORATION; DAVID ANTHONY ALESSI; and ALESSI & KOENIG, LLC.; and DOES I through XX, | |
| Defendant(s). | |
| ARROWCREEK HOMEOWNERS ASSOCIATION; ASSOCIATED MANAGEMENT, INC.; ALESSI TRUSTEE CORPORATION; ALESSI & KOENIG, LLC, | |
| Counterclaimants, | |
| vs. | |
| MELINDA ELLIS, and DOES I through XX, | |
| Counter-Defendant(s). | |

STATE OF NEVADA            )
                           )ss.
COUNTY OF CLARK            )

I, David Alessi, Esq., declare as follows:

1. I am attorney licensed to practice in the state of California. The attorney of record in this matter is Steve Loizzi, Esq.

1

P000008

2.  I am the managing member of the law firm of Alessi & Koenig, LLC.

3.  I am also a member of an investment company known as Profondo, LLC that is duly organized under the laws of the State of Nevada. I have personal knowledge of the matters stated herein and could competently testify thereto.

4.   The managing member of Profondo, LLC is Debbie Pike. A true and correct copy of the Nevada Secretary of State's internet records showing Ms. Pike as the managing member of Profondo is attached hereto as **Exhibit "1."**

5.  Profondo, LLC has an ownership interest in a number of investments including, *inter-alia*, ownership of a parcel of commercial real estate commonly known as 9512 Flamingo Avenue (Units #100, #101, #102) , Las Vegas, Nevada, 89147.

6.  I reached a tentative agreement to pledge this parcel of real property as security against the judgment that Plaintiff obtained against Alessi & Koenig, LLC in this case. This tentative agreement also provided for monthly payments to Plaintiff in the amount of $3,750.00.

7.  It is this tentative agreement which formed the basis of the stipulation that was filed by the parties and signed by this Court.

8.  The specific terms of the Deed of Trust that would have encumbered the Flamingo property were never agreed upon. With respect to the security instrument, it was

2

P000009

simply an "agreement to agree." *See generally*, *Cable & Computer Technology Inc.*

*v. Lockheed Sanders, Inc.*, 214 F. 3d 1030, 1035 (2000) (stating general proposition

that an agreement to agree, lacking essential terms, is unenforceable); Furthermore, in

order to create an enforceable security interest, a written instrument is required.

Nevada Revised Statutes, §111.205.

9.  When I proposed that the Flamingo Property be used as security for the AK

    judgment, I had a good faith belief that I would be able to get Ms. Pike to agree to the

    proposal.

10. When the title company that was hired to prepare the security instrument asked for

    written confirmation that Profondo agreed to hypothecate the Flamingo Property, I

    was very surprised when Ms. Pike indicated that she would not agree to do so.

11. When I learned that the Flamingo Property would not be available to use as security, I

    informed Plaintiff's counsel, in person, as soon as I was able to do so. I believe that

    this occurred on or about February 8, 2016.

12. I have been working with Plaintiff's counsel on the judgment issues with full

    disclosure and cooperation. This includes a meeting with Mr. Bourassa on February

    8, 2016 during which I time I explained the financial condition of Alessi & Koenig

    and made several proposals for addressing the payment issue.

3

P000010

13. Although there is no complete agreement in place, I have caused two payments of $3,750.00 to be made to Plaintiff. True and correct copies of these checks (account numbers redacted) are attached hereto as **Exhibit "2."**

14. I made these payments in good faith and intend to continue to make monthly payments until such time as the pending appeal is resolved by the 9th Circuit Court of Appeals. (Case No. 15-16493)

   I declare under penalty of perjury of the laws of the State of Nevada that the foregoing is true and correct, I have personal knowledge thereof, and that if called to testify thereto, I could and would competently do so.

   FURTHER AFFIANT SAYETH NAUGHT.

   DATED this 16th day of March, 2016.

_____
AFFIANT

SUBSCRIBED AND SWORN before me this 16th day of March, 2016.

_____
Notary Public, in and for said
County and State.

JONA LEPOMA
Notary Public State of Nevada
No. 07-2229-1
My Appt. Exp. Feb. 14, 2019

4

## CERTIFICATE OF SERVICE

I hereby certify that on the __17th__ day of March, 2016, I caused service of a true and correct copy of the foregoing **AFFIDAVIT OF DAVID ALESSI ESQ. IN SUPPORT OF OPPOSITION TO MOTION FOR ORDER TO SHOW CAUSE FOR FAILURE TO COMPLY WITH ORDER GRANTING STIPULATION RE JUDGMENT ENFORCEMENT** to be made electronically via the Case Management/Electronic Case Files (CM/ECF) system, as well as via mail by depositing the same in the United States Mail in Las Vegas, Nevada, postage prepaid, addressed as follows:

Mark J. Bourassa, Esq.
Trent L. Richards, Esq.
The Bourassa Law Group, LLC
8668 Spring Mountain Road, Suite 101
Las Vegas, Nevada 89117-4132
*Attorney for Plaintiff/Respondent,*
*Melinda Ellis, individually and On Behalf of Herself and All Others Similarly Situated*


(an employee of
ALESSI & KOENIG, LLC

3

# EXHIBIT "4"
## Order

# EXHIBIT "4"
## Order

1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                        **DISTRICT OF NEVADA**

10   MELINDA ELLIS, individually and on behalf        Case No.: 3:09-cv-00428-LRH-RAM
     of all others similarly situated,
11
                Plaintiff,
12                                                    **ORDER GRANTING STIPULATION**
                                                      **REGARDING JUDGMENT**
13          v.                                        **ENFORCEMENT**

14   ALESSI TRUSTEE CORPORATION;
     DAVID ANTHONY ALESSI; and
15   ALESSI & KOENIG, LLC.; and
     DOES I through XX,
16
                Defendants.
17   ─────────────────────────────────────

18                              **ORDER**

19          WHEREAS, on July 14, 2015, the Court entered an Amended Judgment [Docket No.

20   218] in a Civil Case;

21          WHEREAS, Defendants filed a Notice of Appeal to United States Court of Appeals for

22   the Ninth Circuit [Docket No. 220] on February 27, 2015;

23          WHEREAS, the appeal of the judgment entered against Defendants was assigned case

24   number 15-16493 by the United States Court of Appeals for the Ninth Circuit;

25

26          WHEREAS, Defendants have not filed a supercedeas bond with the Court so as to stay

27   enforcement of the judgment entered against them; and

28
                              - 1 -

WHEREAS, the Plaintiff and Defendants have reached an agreement to stay enforcement proceedings in accordance with the Stipulation Regarding Judgment Enforcement [Docket No. 233] filed on November 24, 2015.

WHEREFORE, it is hereby ordered that:

1.    Plaintiff will refrain from further judgment enforcement proceedings against Defendant Alessi and Koenig, LLC;

2.    Defendant Alessi & Koenig, LLC will execute a promissory note for the benefit of Plaintiff and her attorneys;

3.    The promissory note shall be in the amount of the judgment as entered against Defendant Alessi and Koenig, LLC in the amount of Three Hundred Eighty-Three Thousand Nine Hundred Ninety Dollars and Seven Cents ($383,990.07), plus interest;

4.    Plaintiff will also be granted a first priority security interest in the form of a deed of trust against certain real property identified as 9512 West Flamingo Road, Suite 100 (APN 163-18-819-016), Suite 101 (APN 163-18-819-017), and Suites 102-103 (APN 163-18-819-035);

5.    The deed of trust shall be in the amount of the judgment as entered against Defendant Alessi and Koenig, LLC in the amount of Three Hundred Eighty-Three Thousand Nine Hundred Ninety Dollars and Seven Cents ($383,990.07), plus interest.

6.    Interest will be calculated at the federal statutory rate as awarded in the Judgment;

7.    Defendant Alessi & Koenig, LLC shall make monthly payment to Plaintiff towards the Promissory note in the amount of Three Thousand Seven Hundred Fifty Dollars ($3,750.00) (the "Monthly Payment");

8.    The promissory note shall become due and payable in full sixty (60) days after

- 2 -

the final order regarding the disposition of the appeal;

9. Defendant Alessi and Koenig, LLC shall be deemed in default of the promissory note if any Monthly Payment is unpaid for a period of 15 days, or if the promissory note is not paid in full within 15 days of it becoming due.

10. Plaintiff and her counsel are entitled to their attorney fees and costs incurred in any enforcement or foreclosure proceedings relating to the promissory note and/or the deed of trust.

11. In the event that Defendant Alessi and Koenig prevails on the appeal, Plaintiff and her counsel shall retain all payments made without recourse by Defendant Alessi and Koenig;

12. Upon executing of this agreement, all collection efforts against Alessi and Koenig shall immediately cease and any existing or pending writs of execution or possession shall be recalled and terminated. Any funds collected from Alessi and Koenig after the execution of this stipulation shall be promptly returned.

IT IS SO ORDERED.

DATED this 16th day of December 2015

LARRY R. HICKS
UNITED STATES DISTRICT COURT

# EXHIBIT "5"
## Payments

# EXHIBIT "5"
## Payments



Wells Fargo Business Online®

## View Check Copy

| Check Number | Date Posted | Check Amount | Account Number |
|---|---|---|---|
| 1578 | 02/12/16 | $3,750.00 | BUSINESS CHECKING XXXXXX |





⌂ **Equal Housing Lender**

© 1995 - 2016 Wells Fargo. All rights reserved.



## Wells Fargo Business Online®

---

## View Check Copy

| Check Number | Date Posted | Check Amount | | Account Number |
|---|---|---|---|---|
| 1606 | 03/09/16 | $3,750.00 | BUSINESS CHECKING XXXXX | |





---

⌂ Equal Housing Lender

© 1995 - 2016 Wells Fargo. All rights reserved.

# EXHIBIT "6"

## David Anthony Alessi's Responses to Plaintiff's First Set of Requests Interrogatories

# EXHIBIT "6"

## David Anthony Alessi's Responses to Plaintiff's First Set of Requests Interrogatories

FRANK C. GILMORE, ESQ. – NSB #10052
fgilmore@rssblaw.com
CODY M. OLDHAM, ESQ. – NSB #14594
coldham@rssblaw.com
Robison, Sharp, Sullivan & Brust
71 Washington Street
Reno, Nevada 89503
Telephone:    (775) 329-3151
Facsimile:    (775) 329-7169
*Attorneys for Defendant David
A. Alessi*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

MELINDA JAMES,

    Plaintiff,

vs.

DAVID ANTHONY ALESSI, an individual

    Defendant.

_____/

Case No.: 2:18-cv-01398-JAD-CWF

**DAVID ANTHONY ALESSI'S
RESPONSES TO PLAINTIFF'S
FIRST SET OF INTERROGATORIES**

  **COMES NOW**, Defendant, DAVID ANTHONY ALESSI (hereinafter referred to as "Respondent"), by and through his attorney of record, and hereby objects and responds to Plaintiff, MELINDA JAMES's ("Plaintiff") First Set of Interrogatories as follows:

**PRELIMINARY STATEMENT**

  These responses and objections are not intended to be, and should not be interpreted as, a waiver of any objection to the admissibility of any such information on the grounds of privilege, work product doctrine, hearsay, relevance or any other objection.

  Additionally, Respondent objects to each interrogatory to the extent that it calls for information protected by attorney-client privilege and/or work product doctrine. Any inadvertent disclosure of information protected by the aforementioned privileges, or any other applicable privileges and/or immunities recognized by statute or case law shall not be deemed a waiver of the privilege/immunity.

1    Finally, these responses are based solely on information presently known to Respondent.

2    Further discovery may lead to additions to, changes in, or modifications of these responses.

3    Accordingly, these responses are being given without prejudice to Respondent's right to

4    produce subsequent discovery evidence and to introduce the same at trial.

5    **INTERROGATORY NO. 1:**

6    Identify each person providing any information used to respond to these Interrogatories or

7    Plaintiff's First Set of Requests for Production of Documents to David Anthony Alessi, and for

8    each person identified, summarize the information provided.

9    **RESPONSE TO INTERROGATORY NO. 1:**

10   David Anthony Alessi.

11   **INTERROGATORY NO. 2:**

12   Identify the names, addresses, and telephone numbers of every person(s), known to you or to your

13   attorneys, who has or claims to have any knowledge concerning the facts and circumstances

14   described in the First Amended Complaint or in your answers to any Interrogatories in this case,

15   but not limited to, eye-witnesses to such incidents and other persons having knowledge thereof.

16   For each person identified, please state what knowledge that person has or claims to have.

17   **RESPONSE TO INTERROGATORY NO. 2:**

18   Debi Pike, Member, Profondo, LLC.  9500 W Flamingo rd. 204, LV NV 89147. 702-222-2391

19   **INTERROGATORY NO. 3:**

20   Please identify your relationship with Debbie Pike.

21   **RESPONSE TO INTERROGATORY NO. 3:**

22   Siblings.

23   **INTERROGATORY NO. 4:**

24   Please identify each and every of any kind of communication (i.e., oral or written) between you

25   and Debbie Pike from September 2015 to March 2016 relating in any way to the Subject Property

26   and identify all documents relating thereto and persons having knowledge thereof.

27   **RESPONSE TO INTERROGATORY NO. 4:**

28   Respondent does not recall any specific communication relevant to the request.

1    **INTERROGATORY NO. 5:**

2    Please identify your relationship with Alessi & Koenig, LLC.

3    **RESPONSE TO INTERROGATORY NO. 5:**

4    Member.

5    **INTERROGATORY NO. 6:**

6    Please identify your relationship with Lawyers Group, LLP.

7    **RESPONSE TO INTERROGATORY NO. 6:**

8    Member.

9    **INTERROGATORY NO. 7:**

10    To the extent that it is your position that there is no valid contract between Plaintiff and Defendant,

11    please state each and every fact and identify each and every document that supports your position.

12    **RESPONSE TO INTERROGATORY NO. 7:**

13    Respondent was not a party to the contract, was not a judgment debtor. The proposed agreement

14    was declined by Debi Pike, on behalf of Profondo, pursuant to the Amended Operating Agreement.

15    **INTERROGATORY NO. 8:**

16    To the extent it is your position that you had no obligation to perform under the terms of the Order

17    Granting Stipulation Regarding Judgment Enforcement, please state each and every fact and

18    identify each and every document that supports your position.

19    **RESPONSE TO INTERROGATORY NO. 8:**

20    Respondent is not A&K, not a party to the contract. There was no meeting of the minds; the

21    parties never agreed on essential material terms – i.e. interest rate, maturity date.

22    **INTERROGATORY NO. 9:**

23    To the extent it is your position that "Plaintiff failed to mitigate her damages" as referenced in

24    your Second Affirmative Defense, please state each and every fact and identify each and every

25    document that supports your position.

26    **RESPONSE TO INTERROGATORY NO. 9:**

27    Alessi & Koenig offered Plaintiff the assets of A&K as payment of the judgment.

28    / / /

1   **INTERROGATORY NO. 10:**

2   To the extent it is your position that "to the extent Defendant's actions violated the law, such

3   actions were the result of a bona fide error notwithstanding reasonable procedures designed to

4   avoid such error(s)" as referenced in your Fourth Affirmative Defense, please state each and every

5   fact and identify each and every document that supports your opinion.

6   **RESPONSE TO INTERROGATORY NO. 10:**

7   Respondent is not A&K, not a party to the contract. There was no meeting of the minds; the

8   parties never agreed on essential material terms– i.e. interest rate, maturity date.

9   **INTERROGATORY NO. 11:**

10  To the extent it is your position that "Plaintiff's claims may be precluded, in whole or part, to the

11  extent Plaintiff's damages, if any, were caused by Plaintiff's acts and/or omissions" as referenced

12  in your Fifth Affirmative Defense, please state each and every fact and identify each and every

13  document that supports your opinion.

14  **RESPONSE TO INTERROGATORY NO. 11:**

15  Plaintiff's refusal of the offer of the assets of A&K as payment of the judgment.

16  **INTERROGATORY NO. 12:**

17  To the extent it is your position that "Plaintiff's claims may be precluded, in whole or part, to the

18  extent Plaintiff's purported damages, if any, were caused by third parties over whom the Defendant

19  has no control" as referenced in your Sixth Affirmative Defense, please state each and every fact

20  and identify each and every document that supports your position.

21  **RESPONSE TO INTERROGATORY NO. 12:**

22  A&K and Debi Pike are third parties over whom the Defendant has no control.

23  **INTERROGATORY NO. 13:**

24  To the extent it is your position that "Plaintiff's and/or claims are barred by release, contract

25  provision, waiver, unclean hands, laches, estoppel and/or res judicata" as referenced in your Eighth

26  Affirmative Defense, please state each and every fact and identify each and every document that

27  supports your position.

28  / / /

**RESPONSE TO INTERROGATORY NO. 13:**

Res judicata – A&K's Chapter 7 Bankruptcy; the contract by Amended Operating Agreement.

**INTERROGATORY NO. 14:**

To the extent it is your position that "Plaintiff's contract claims fails for lack of consideration and failure of consideration" as referenced in your Ninth Affirmative Defense, please state each and every fact and identify each and every document that supports your position.

**RESPONSE TO INTERROGATORY NO. 14:**

Respondent is not A&K, not a party to the contract. There was no meeting of the minds; the parties never agreed on essential material terms– i.e. interest rate, maturity date.

**INTERROGATORY NO. 15:**

For each Response to Plaintiff's Request for Admission served in this matter that is not an unqualified admission:

    a.    State the number of the request;

    b.    State all facts which base your response;

    c.    State the names, addresses, and telephone numbers of all persons who have knowledge of those facts; and

    d.    Identify all documents and other tangible things that support your response and state the name, address, and telephone number of the person who has each document or thing.

**RESPONSE TO INTERROGATORY NO. 15:**

- a. #7 – Deny. b. Respondent does not recall who initiated the proposal, but affirms there was no personal obligation for the judgment against A&K, and never intended to create one in negotiating the agreement never reached. c. No other persons known to Respondent. d. No additional documents known to Respondent.

- a. #8 – Deny. b. Respondent did not personally agree to assume the obligation for the judgment against A&K. c. No other persons known to Respondent. d. No additional documents known to Respondent.

- a. #9 – Deny. b. Respondent does not acknowledge a tentative agreement was

1    reached. c. No other persons known to Respondent. d. No additional documents

2    known to Respondent.

3    • a. #10 – Deny. b. Respondent personally made no payments. c. No other persons

4    known to Respondent. d. No additional documents known to Respondent.

5    • a. #12 – Deny. b. Tom Bayard was not a Nevada attorney, and later found to be in

6    active CA Bar discipline, and was not eligible to make such a representation. c.

7    Tom Bayard, location unknown. d. No additional documents known to Respondent.

8    • a. #13 – Deny. b. Respondent made no such authorization. c. Tom Bayard, location

9    unknown. d. No additional documents known to Respondent.

10    • a. #14 – Lacked Sufficient Information. b. Respondent does not recall whether or

11    not he signed the documents referenced. c. Debi Pike, contact information provided

12    above. d. No additional documents known to Respondent.

13    • a. #15 – Admit and clarify. b. Respondent was without sufficient information at the

14    time. c. Debi Pike, contact information provided above. d. No additional documents

15    known to Respondent.

16    • a. #16 – Deny. b. Respondent was without sufficient information at the time. c.

17    Debi Pike, contact information provided above. d. No additional documents known

18    to Respondent.

19    **INTERROGATORY NO. 16:**

20    Identify your relationship with MCLV Holdings LLC.

21    **RESPONSE TO INTERROGATORY NO. 16:**

22    None.

23    DATED this 13th day of September, 2018.

24    ROBISON, SHARP, SULLIVAN & BRUST
25    71 Washington Street
     Reno, Nevada 89503

26

27    FRANK C. GILMORE, ESQ. – NSB #10052
     CODY M. OLDHAM, ESQ. – NSB #14594
28    Attorneys for Defendant David A. Alessi

Robison, Sharp,
Sullivan & Brust
71 Washington St.
Reno, NV 89503
(775) 329-3151

**VERIFICATION**

STATE OF ___Nevada___ )
                                        ) ss.
COUNTY OF ___Clark___ )

David Anthony Alessi, being first duly sworn, deposes and says under penalty of perjury:

That he is the Defendant in this matter; that he has read the attached **DAVID ANTHONY ALESSI'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES** and knows the contents thereof and that the same are true of his own knowledge, except as to the matters stated therein on information and belief, and as to those matters he believes them to be true.

Dated this 12 day of September, 2019.

_____
DAVID ANTHONY ALESSI

STATE OF ___Nevada___ )
                                        ): ss,
COUNTY OF ___Clark___ )

Subscribed and Sworn to before me this 12th day of September, 2019, by David Anthony Alessi.

_____
NOTARY PUBLIC

JONA LEPOMA
Notary Public, State of Nevada
No. 07-2229-1
My Appt. Exp. Feb. 14, 2023

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I certify that I am an employee of Robison, Sharp, Sullivan &
Brust, and that on this date I caused to be served a true copy of **DAVID ANTHONY ALESSI'S**
**RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES** on all parties to
this action by the method(s) indicated below:

___✓___    by placing an original or true copy thereof in a sealed envelope, with
sufficient postage affixed thereto, in the United States mail at Reno,
Nevada, addressed to:

       Mark J. Bourassa, Esq.
       The Bourassa Law Group
       2350 W Charleston Blvd., Suite 100
       Las Vegas Nv 89102

_____    by using the Court's CM/ECF Electronic Notification System addressed to:

       Mark J. Bourassa, Esq.
       Email:  mbourassa@blgwins.com

_____    by placing an original or true copy thereof in a sealed envelope for personal
delivery/hand delivery of original addressed to:

       Mark J. Bourassa, Esq.
       The Bourassa Law Group
       2350 W Charleston Blvd., Suite 100
       Las Vegas Nv 89102

_____    by facsimile (fax) addressed to:

_____    by Federal Express/UPS or other overnight delivery addressed to:

DATED: This _13th_ day of September, 2019.

                          _____
                          Employee of Robison, Sharp, Sullivan & Brust

Robison, Sharp,
Sullivan & Brust
71 Washington St.
Reno, NV 89503
(775) 329-3151

# EXHIBIT "7"
# Amended Operating Agreement of Profondo, LLC

# EXHIBIT "7"
# Amended Operating Agreement of Profondo, LLC

## AMENDED OPERATING AGREEMENT
## PROFONDO, LLC

This AMENDED OPERATING AGREEMENT is made on April 2, 2014, 2010 between DAVID ALESSI (98% interest) and DEBI PIKE (2% interest).

1. NAME AND BUSINESS. The parties have formed a limited liability company under the name of PROFONDO, LLC to conduct a residential and commercial real estate investment company. The principal office of the business is in Nevada

2. TERM. The company began on March 2, 2005, and shall continue until terminated as herein provided.

3. CAPITAL. The capital of the company shall be contributed in cash by the owners as follows: A separate capital account shall be maintained for each company owner. Neither owner shall withdraw any part of his capital account. Upon the demand of either owner, the capital accounts of the owners shall be maintained at all times in the proportions in which the owners share in the profits and losses of the company.

4. MANAGEMENT. The company is and shall be manager-managed. The manager of the company is Debi Pike.

5. MANAGER POWERS. The manager of the company shall have broad managerial powers to take any action deemed necessary for the benefit of the company. These managerial powers include, *inter-alia*, the power to purchase and manage real property as well as the power to borrow money and encumber any property owned by the company under any terms and conditions deemed appropriate by the company's manager. Any such act by the manager shall be deemed fully binding on the company, the manager and the other members of the company.

6. PROFIT AND LOSS. The net profits of the company shall be divided between the owners and the net losses shall be borne by them as follows: DAVID ALESSI 98% AND DEBI PIKE 2%.

7. BANKING. All funds of the limited liability partnership shall be deposited in its name in such checking account or accounts as shall be designated by the company owners. All withdrawals therefrom are to be made upon checks signed by either owner.

8. BOOKS. The company books shall be maintained at the principal office of the company, and each owner shall at all times have access thereto.

9. VOLUNTARY TERMINATION. The company may be dissolved at any time by agreement of the owners, in which event the owners shall proceed with reasonable promptness to liquidate the business of the company. The company name shall be sold with the other assets of the business. The assets of the company business shall be used and distributed in the following order: (a) to pay or provide for the payment of all company liabilities and liquidating expenses and obligations; (b) to equalize the income accounts of the owners; (c) to discharge the balance of the income account of the owners; (d) to equalize the capital accounts of the owners; and (e) to discharge the balance of the capital accounts of the owners.

DEFENDANT_000001

**10. DEATH.** Upon the death of either owner, the surviving owner shall have the right either to purchase the interest of the decedent in the company or to terminate and liquidate the company business. If the surviving owner elects to purchase the decedent's interest, he shall serve notice in writing of such election, within three months after the death of the decedent, upon the executor or administrator of the decedent, or, if at the time of such election no legal representative has been appointed, upon any one of the known legal heirs of the decedent at the last-known address of such heir. (a) If the surviving owner elects to purchase the interest of the decedent in the company, the purchase price shall be equal to the decedents capital account as at the date of his death plus the decedent's income account as at the end of the prior fiscal year, increased by his share of company profits or decreased by his share of company losses for the period from the beginning of the fiscal year in which his death occurred until the end of the calendar month in which his death occurred, and decreased by withdrawals charged to his income account during such period. No allowance shall be made for goodwill, trade name, patents, or other intangible assets, except as those assets have been reflected on the company books immediately prior to the decedent's death; but the survivor shall nevertheless be entitled to use of the trade name of the company. (b) Except as herein otherwise stated, the procedure as to liquidation and distribution of the assets of the company business shall be the same as stated in  paragraph 10 with reference to voluntary termination.

**11. ARBITRATION.** Any controversy or claim arising out of or relating to this Agreement, or the breach hereof, shall be settled by arbitration in accordance with the rules, then obtaining, of the American Arbitration Association, and judgment upon the award rendered may be entered in any court having jurisdiction thereof. In witness whereof the parties have signed this Agreement.

IN WITNESS WHEREOF, the/I have executed this Agreement the date first above written.

_David Alessi_

SIGNED and SWORN to before me this
2nd day of April , 2014

_Notary Public, Clark County Nevada_

JONA LEPOMA
Notary Public, State of Nevada
Appointment No. 07-2229-1
My Appt. Expires Feb. 14, 2015

IN WITNESS WHEREOF, the/I have executed this Agreement the date first above written.

_Debi Pike_

SIGNED and SWORN to before me this
2nd day of April , 2014

_Notary Public, Clark County Nevada_

JONA LEPOMA
Notary Public, State of Nevada
Appointment No. 07-2229-1
My Appt. Expires Feb. 14, 2015

2

# EXHIBIT "8"
## Profondo, LLC's Annual List Filing for 2015

# EXHIBIT "8"
## Profondo, LLC's Annual List Filing for 2015

**INITIAL/ANNUAL LIST OF MANAGERS OR MANAGING MEMBERS AND STATE BUSINESS LICENSE APPLICATION OF:**

ENTITY NUMBER

PROFONDO, LLC

E0133282005-1

NAME OF LIMITED-LIABILITY COMPANY

FOR THE FILING PERIOD OF | MAR, 2015 | TO | MAR, 2016

*100402*

**USE BLACK INK ONLY - DO NOT HIGHLIGHT**

**\*\*YOU MAY FILE THIS FORM ONLINE AT www.nvsilverflume.gov\*\***

☐ **Return one file stamped copy.** (If filing not accompanied by order instructions, file stamped copy will be sent to registered agent.)

_IMPORTANT:_ Read instructions before completing and returning this form.

1. Print or type names and addresses, either residence or business, for all manager or managing members. **A Manager, or if none, a Managing Member** of the LLC must sign the form. _FORM WILL BE RETURNED IF UNSIGNED._

2. If there are additional managers or managing members, attach a list of them to this form.

3. Return completed form with the fee of $125.00. A $75.00 penalty must be added for failure to file this form by the deadline. An annual list received more than 90 days before its due date shall be deemed an amended list for the previous year.

4. State business license fee is $200.00. Effective 2/1/2010, $100.00 must be added for failure to file form by deadline.

5. Make your check payable to the Secretary of State.

6. **Ordering Copies:** If requested above, one file stamped copy will be returned at no additional charge. To receive a certified copy, enclose an additional $30.00 per certification. **A copy fee of $2.00 per page** is required for **each additional copy** generated when ordering 2 or more file stamped or certified copies. Appropriate instructions must accompany your order.

7. Return the completed form to: Secretary of State, 202 North Carson Street, Carson City, Nevada 89701-4201, (775) 684-5708.

8. Form must be in the possession of the Secretary of State on or before the last day of the month in which it is due. (Postmark date is not accepted as receipt date.) Forms received after due date will be returned for additional fees and penalties. Failure to include annual list and business license fees will result in rejection of filing.

| Filed in the office of | Document Number |
|---|---|
| _Barbara K. Cegavske_ Barbara K. Cegavske Secretary of State State of Nevada | 20150221898-58 |
| | Filing Date and Time 05/15/2015 11:49 AM |
| | Entity Number E0133282005-1 |

(This document was filed electronically.)
**ABOVE SPACE IS FOR OFFICE USE ONLY**

**ANNUAL LIST FILING FEE** $125.00  **LATE PENALTY** $75.00 (if filing late)   **BUSINESS LICENSE FEE:** $200.00   **LATE PENALTY:** $100.00 (if filing late)

---

**CHECK ONLY IF APPLICABLE AND ENTER EXEMPTION CODE IN BOX BELOW**

**NRS 76.020 Exemption Codes**

☐ Pursuant to NRS Chapter 76, this entity is exempt from the business license fee. Exemption code: [ ]

001 - Governmental Entity
005 - Motion Picture Company
006 - NRS 680B.020 Insurance Co.

**NOTE:** If claiming an exemption, a notarized Declaration of Eligibility form must be attached. Failure to attach the Declaration of Eligibility form will result in rejection, which could result in late fees.

| NAME | |
|---|---|
| DEBI PIKE | **MANAGER OR MANAGING MEMBER** |

| ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 9440 W. SAHARA AVE., STE. 237 , USA | LAS VEGAS | NV | 89117 |

| NAME | |
|---|---|
| | **MANAGER OR MANAGING MEMBER** |

| ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| | | | |

| NAME | |
|---|---|
| | **MANAGER OR MANAGING MEMBER** |

| ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| | | | |

| NAME | |
|---|---|
| | **MANAGER OR MANAGING MEMBER** |

| ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| | | | |

---

None of the managers or managing members identified in the list of managers and managing members has been identified with the fraudulent intent of concealing the identity of any person or persons exercising the power or authority of a manager or managing member in furtherance of any unlawful conduct.

I declare, to the best of my knowledge under penalty of perjury, that the information contained herein is correct and acknowledge that pursuant to NRS 239.330, it is a category C felony to knowingly offer any false or forged instrument for filing in the Office of the Secretary of State.

**X** DAVID ALESSI

| Title | Date |
|---|---|
| OWNER | 5/15/2015 11:49:03 AM |

**Signature of Manager, Managing Member or Other Authorized Signature**

Nevada Secretary of State List ManorMem
Revised: 1-5-15

**P000038**

# EXHIBIT "9"
## Bankruptcy Petition

# EXHIBIT "9"
## Bankruptcy Petition

**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

DISTRICT OF NEVADA

Case number *(if known)* _____ Chapter __7__

☐ Check if this an amended filing

## Official Form 201
# Voluntary Petition for Non-Individuals Filing for Bankruptcy 4/16

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

| | | |
|---|---|---|
| 1. | **Debtor's name** | **Alessi & Koenig, LLC** |

| | | |
|---|---|---|
| 2. | **All other names debtor used in the last 8 years** Include any assumed names, trade names and *doing business as* names | |

| | | |
|---|---|---|
| 3. | **Debtor's federal Employer Identification Number** (EIN) | **26-3435721** |

4. **Debtor's address**

| Principal place of business | Mailing address, if different from principal place of business |
|---|---|
| **9500 W. Flamingo Rd., Ste. 205 Las Vegas, NV 89147** | |
| Number, Street, City, State & ZIP Code | P.O. Box, Number, Street, City, State & ZIP Code |
| **Clark** | Location of principal assets, if different from principal place of business |
| County | |
| | Number, Street, City, State & ZIP Code |

| | | |
|---|---|---|
| 5. | **Debtor's website** (URL) | |

6. **Type of debtor**

■ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding LLP)

☐ Other. Specify: _____

Debtor  **Alessi & Koenig, LLC**　　　　　　　　　　　　　　　　　　Case number (*if known*)
　　　　Name

**7.** **Describe debtor's business**　　A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☑ None of the above

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. §501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. §80a-3)

☐ Investment advisor (as defined in 15 U.S.C. §80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor.
See http://www.uscourts.gov/four-digit-national-association-naics-codes.
＿＿＿＿

**8.** **Under which chapter of the Bankruptcy Code is the debtor filing?**　　*Check one:*

☑ Chapter 7

☐ Chapter 9

☐ Chapter 11. *Check all that apply*:

☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,566,050 (amount subject to adjustment on 4/01/19 and every 3 years after that).

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9.** **Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

☑ No.

☐ Yes.

If more than 2 cases, attach a separate list.

| District | _____ | When | _____ | Case number | _____ |
| District | _____ | When | _____ | Case number | _____ |

**10.** **Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

☑ No

☐ Yes.

List all cases. If more than 1, attach a separate list

| Debtor | _____ | | Relationship | _____ |
| District | _____ | When | _____ | Case number, if known | _____ |

Official Form 201　　　　　　**Voluntary Petition for Non-Individuals Filing for Bankruptcy**　　　　　　page 2

| Debtor | **Alessi & Koenig, LLC** | Case number (*if known*) | |
|---|---|---|---|
| | Name | | |

**11. Why is the case filed in *this district*?**

*Check all that apply:*

■ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

■ No

☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____

Number, Street, City, State & ZIP Code

**Is the property insured?**

☐ No

☐ Yes. Insurance agency _____

Contact name _____

Phone _____

---

**■ Statistical and administrative information**

**13. Debtor's estimation of available funds**   .   *Check one:*

☐ Funds will be available for distribution to unsecured creditors.

■ After any administrative expenses are paid, no funds will be available to unsecured creditors.

**14. Estimated number of creditors**

| | | |
|---|---|---|
| ☐ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than100,000 |
| ■ 200-999 | | |

**15. Estimated Assets**

| | | |
|---|---|---|
| ■ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50  million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

**16. Estimated liabilities**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ■ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50  million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

| Debtor | Alessi & Koenig, LLC | Case number (*if known*) |
|---|---|---|
| | Name | |

**Request for Relief, Declaration, and Signatures**

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is trued and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    **December 13, 2016**
              MM / DD / YYYY

**X** **/s/ David Alessi**                    **David Alessi**
Signature of authorized representative of debtor        Printed name

Title    **Managing Member**

**18. Signature of attorney**

**X** **/s/ Ryan Alexander**            Date   **December 13, 2016**
Signature of attorney for debtor                MM / DD / YYYY

**Ryan Alexander**
Printed name

**The Law Office of Ryan Alexander PLLC**
Firm name

**3017 West Charleston Blvd Suite 58**
**Las Vegas, NV 89102**
Number, Street, City, State & ZIP Code

Contact phone   **702-868-3311**      Email address   **ryan@ryanalexander.us**

**10845**
Bar number and State

Alessi & Koenig, LLC
9500 W. Flamingo Rd., Ste. 205
Las Vegas, NV 89147

Ryan Alexander
The Law Office of Ryan Alexander PLLC
3017 West Charleston Blvd Suite 58
Las Vegas, NV 89102

Artin Voskanian
c/o James Adams, Esq.
8010 W. Sahara Ave. Ste 260
Las Vegas, NV 89117

Edward D. Boyack Esq.
401 N Buffalo Ste. 202
Las Vegas, NV 89145

Estates at Seven Hills HOA
4131 Gunn Highway
Tampa, FL 33618

Levi Jones
c/o Kolesar & Latham
400 S Rampart #400
Las Vegas, NV 89145

Melinda Ellis James
c/o Bourassa Law Group
8668 Spring Mountain Rd. #101
Las Vegas, NV 89117

Southern Highlands Homeowners Ass'n
11411 Southern Highlands Pkwy
Ste. 100
Las Vegas, NV 89141

Tamara Peterson, Esq.
10001 Park Run Drive
Las Vegas, NV 89145

# United States Bankruptcy Court
### District of Nevada

In re    **Alessi & Koenig, LLC**                       Case No.

                                        Debtor(s)             Chapter     **7**

## CORPORATE OWNERSHIP STATEMENT (RULE 7007.1)

Pursuant to Federal Rule of Bankruptcy Procedure 7007.1 and to enable the Judges to evaluate possible disqualification or recusal, the undersigned counsel for    **Alessi & Koenig, LLC**    in the above captioned action, certifies that the following is a (are) corporation(s), other than the debtor or a governmental unit, that directly or indirectly own(s) 10% or more of any class of the corporation's(s') equity interests, or states that there are no entities to report under FRBP 7007.1:

■ None [*Check if applicable*]

**December 13, 2016**
Date

**/s/ Ryan Alexander**
**Ryan Alexander**
Signature of Attorney or Litigant
Counsel for    **Alessi & Koenig, LLC**
**The Law Office of Ryan Alexander PLLC**
**3017 West Charleston Blvd Suite 58**
**Las Vegas, NV 89102**
**702-868-3311 Fax:702-822-1133**
**ryan@ryanalexander.us**

# EXHIBIT "10"
# Grant, Bargain, Sale Deed

# EXHIBIT "10"
# Grant, Bargain, Sale Deed

Inst #: 20160930-0005319
Fees: $20.00 N/C Fee: $0.00
RPTT: $4207.50 Ex: #
09/30/2016 03:25:19 PM
Receipt #: 2889250
Requestor:
FIDELITY NATIONAL TITLE - L
Recorded By: RYUD   Pgs: 5
**DEBBIE CONWAY**
CLARK COUNTY RECORDER

APN: 163-18-819-016 163-18-819-035 163-18-
819-017
Affix R.P.T.T. $4,207.50

RECORDING REQUESTED BY:
FIDELITY NATIONAL TITLE
WHEN RECORDED MAIL TO and MAIL TAX
STATEMENT TO:
MCLV HOLDINGS, LLC, A NEVADA
LIMITED LIABILITY COMPANY
9512 W. FLAMINGO RD #102
LAS VEGAS, NV 89147
0005641B
ESCROW NO: 00056541-118-DS

## GRANT, BARGAIN, SALE DEED

THIS INDENTURE WITNESSETH: That
   Profondo, LLC, a Nevada limited liability company

FOR A VALUABLE CONSIDERATION, the receipt of which is hereby acknowledged, do hereby
Grant, Bargain Sell and convey to

   MCLV Holdings, LLC, a Nevada limited liability company

all that real property situated in the County of Clark, State of Nevada, bounded and described as
follows:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.**

Subject to:   1.   Taxes for the current fiscal year, paid current.
            2.   Conditions, covenants, restrictions, reservations, rights, rights of way and
                 easements now of record, if any.

Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging
or in anywise appertaining.

Witness my/our hand(s) this ___23___ day of __September_____, 2016.

Profondo, LLC, a Nevada limited liability
company

By:  Debi Pike, Manager

STATE OF NEVADA
COUNTY OF CLARK                           } ss:

On this ___9-23-16_____

appeared before me, a Notary Public,

__Debi Pike_____

_____
personally known or proven to me to
be the person(s) whose name(s) is/are
subscribed to the above instrument,
who acknowledged that he/she/they
executed the instrument for the
purposes therein contained.

_____
Notary Public

My commission expires:  __4-30-20___

**NOTARY JURAT FOR GRANT, BARGAIN, SALE DEED
FOR ESCROW NO.:  00056541-118DS**

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
DOROTHY M. SWEET
Appt. No. 93-1250-1
My Appt. Expires April 30, 2020

Escrow No. 00056541 - 118 - DS
*Grant, Bargain, Sale Deed....Continued*

## EXHIBIT A

PARCEL ONE (1): (COMMON ELEMENTS)

AN UNDIVIDED 25.6666% AS TO UNIT 100 AND AN UNDIVIDED 24.7344% AS TO UNIT
101 AND AN UNDIVIDED 23.9540% AS TO UNIT 102 AND AN UNDIVIDED 25.6449% AS
TO UNIT 103 ALLOCATED INTEREST AS TENANT-IN-COMMON IN AND TO THE
COMMON ELEMENTS OF BUILDING 2 OF FLAMINGO POINTE CORPORATE CENTRE,
AS SHOWN BY MAP THEREOF ON
FILE IN BOOK 125 OF PLATS, PAGE 39, AND AS AMENDED BY THAT CERTAIN
CERTIFICATE OF AMENDMENT RECORDED SEPTEMBER 27, 2005 IN BOOK 20050927
AS DOCUMENT NO. 01550, AND AS AMENDED BY THAT CERTAIN CERTIFICATE OF
AMENDMENT RECORDED OCTOBER 26, 2005 IN BOOK 20051026 AS DOCUMENT NO.
01293, OFFICIAL RECORDS; SAID ALLOCATED INTEREST BEING MORE
PARTICULARLY SET FORTH IN AND SUBJECT TO THAT CERTAIN "AMENDED AND
RESTATED DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS FOR
FLAMINGO POINTE CORPORATE CENTRE, A COMMERCIAL CONDOMINIUM"
RECORDED FEBRUARY 7, 2006 IN BOOK 20060207 AS DOCUMENT NO. 02131,
OFFICIAL RECORDS, AND ANY SUBSEQUENT AMENDMENTS AND/OR SUPPLEMENTS
THERETO (HEREAFTER, THE DECLARATION").

 EXCEPTING THEREFROM ANY PORTION THEREOF WHICH IS DESIGNATED AS A
"LIMITED COMMON ELEMENT" IN THE DECLARATION OR ON THE ABOVE
REFERENCED PLAT.

PARCEL TWO (2): (UNIT)

UNIT NOS. 100, 101, 102 AND 103 IN BUILDING 2 AS SHOWN ON THE ABOVE
REFERENCED PLAT.

PARCEL THREE (3): (COMMON ELEMENTS)

AN EASEMENT FOR THE INSTALLATION, REPLACEMENT, REPAIR OR
MAINTENANCE OF UTILITY LINES AND SYSTEMS, INCLUDING, BUT NOT LIMITED
TO, NATURAL GAS, WATER, SEWER TELEPHONE, ELECTRICITY AND CABLE
TELEVISION OR OTHER COMMUNICATION LINES AND SYSTEMS FOR THOSE
PORTIONS DESIGNATED AS "COMMON AREA", AND "COMMON ELEMENTS", AS
DEFINED IN AND SUBJECT TO THE DECLARATION, WHICH ARE APPURTENANT TO
PARCELS I AND II DESCRIBED ABOVE.

DEFENDANT_000015

PARCEL FOUR (4): (APPURTENANT EASEMENTS)

NON-EXCLUSIVE EASEMENTS FOR INGRESS, EGRESS, VEHICULAR AND
PEDESTRIAN TRAFFIC OVER AND ACROSS THE COMMON AREAS AND COMMON
ELEMENTS OF FLAMINGO POINTE CORPORATE CENTRE, AS MORE PARTICULARLY
DESCRIBED IN AND SUBJECT TO THE DECLARATION, WHICH EASEMENT IS
APPURTENANT TO THE UNITS DESCRIBED IN PARCEL 2.

PARCEL FIVE (5): (LIMITED COMMON ELEMENTS AND PARKING SPACES)

THE EXCLUSIVE RIGHT OF USE AND POSSESSION OF THOSE PORTIONS OF THE
ABOVE REFERENCED PLAT WHICH ARE DESIGNATED AS A LIMITED COMMON
ELEMENT IN THE DECLARATION; TOGETHER WITH THE EXCLUSIVE RIGHT OF USE
AND POSSESSION OF PARKING SPACE LIMITED COMMON ELEMENT NO. 7 AS TO
UNIT 100 AND NO. 8 AS TO UNIT 101 AND  NO. 9 AS TO UNIT 102 AND NO. 10 AS TO
UNIT 103 AS SET FORTH ON THE ABOVE REFERENCED PLAT; AND LIMITED
COMMON ELEMENTS ARE APPURTENANT TO THE UNITS DESCRIBED IN PARCEL 2
HEREIN, AS PROVIDED FOR IN AND SUBJECT TO THE DECLARATION.

**STATE OF NEVADA**
**DECLARATION OF VALUE FORM**

1. Assessor Parcel Number(s) ☐
   a)  **163-18-819-016**
   b)  **163-18-819-035**
   c)  **163-18-819-017**
   d)  _____

2. Type of Property:
   a) ☐  Vacant Land        b) ☐  Single Fam. Res.
   c) ☐  Condo/Twnhse      d) ☐  2-4 Plex
   e) ☐  Apt. Bldg.          f) ☑  Comm'l/Ind'l
   g) ☐  Agricultural        h) ☐  Mobile Home
   i) ☐  Other ____

| FOR RECORDER'S OPTIONAL USE ONLY |
|---|
| Document/Instrument #_____ |
| Book:_____  Page:_____ |
| Date of Recording:_____ |
| Notes:_____ |

3. Total Value/Sales Price of Property:                                   **$825,000.00**
   Deed in Lieu of Foreclosure Only (value of property):     **(0.00                    )**
   Transfer Tax Value:                                                           **$825,000.00**
   Real Property Transfer Tax Due:                                        **$4,207.50**

4. **If Exemption Claimed:**
   a.  Transfer Tax Exemption, per NRS 375.090, Section: _____
   b.  Explain Reason for Exemption: ____

5. Partial Interest: Percentage being transferred: ____%

The undersigned Seller/(Grantor)/Buyer (Grantee), declares and acknowledges, under penalty of perjury, pursuant to NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their information and belief, and can be supported by documentation if called upon to substantiate the information provided herein. Furthermore, the parties agree that disallowance of any claimed exemption, or other determination of additional tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month.

**Pursuant to NRS 375.030, the Buyer and Seller shall be jointly and severally liable for any additional amount owed.**

Signature _____          Capacity **Grantor** _____

Signature _____          Capacity **Grantee** _____

**SELLER (GRANTOR) INFORMATION**                    **BUYER (GRANTEE) INFORMATION**
**(REQUIRED)**                                                       **(REQUIRED)**
Print Name    Profondo, LLC, a Nevada limited          Print Name:  MCLV Holdings, LLC, a Nevada
                    liability company                                         limited liability company *#102*
Address:    *100297 Sunset Gardens*                      Address:   *9512 W. Flamingo Rd #102*
City, St., Zip: *Las Vegas, NV  89135*                    City, St., Zip: *Las Vegas, NV  89147*

**COMPANY REQUESTING RECORDING**

Print Name:    Fidelity National Title Agency of Nevada, Inc.          Escrow #:00056541-118
Address:        2450 St. Rose Parkway, Suite 150
City/State/Zip: Henderson, NV 89074

AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED

DEFENDANT_000017

# EXHIBIT "11"
## Debi Pike's Deposition rough draft transcript

# EXHIBIT "11"
## Debi Pike's Deposition rough draft transcript

1

1            DISCLAIMER

2  IN RE:  JAMES VS. ALESSI

3  DEPOSITION OF:  DEBI PIKE

4            I, MARK J. BOURASSA, ESQ. HEREBY ACKNOWLEDGE

5  THAT THE STENOGRAPHIC NOTES TAKEN IN THIS PROCEEDING ARE

6  BEING TRANSLATED INSTANTANEOUSLY INTO THEIR ENGLISH

7  EQUIVALENT THROUGH AN AUTOMATED PROCESS CALLED REALTIME

8  TRANSLATION;

9            THAT AT THE END OF THE PROCEEDINGS, I RECEIVED

10  THE ROUGH DRAFT TRANSCRIPT FROM THE COURT REPORTER;

11            THAT THIS REALTIME TRANSLATION IS A ROUGH DRAFT

12  AND IS NEITHER CERTIFIED, EDITED, NOR PROOFREAD BY THE

13  COURT REPORTER;

14            THAT THIS UNCERTIFIED, UNEDITED ROUGH REALTIME

15  DRAFT MAY CONTAIN UNTRANSLATED STENOGRAPHIC SYMBOLS, AN

16  OCCASIONAL REPORTER'S NOTE, A MISSPELLED PROPER NAME,

17  AND/OR NONSENSICAL WORD COMBINATIONS, DEPENDING UPON THE

18  COMPLEXITY OF THE DEPOSITION AND THE SPEED OF THE

19  QUESTIONS AND ANSWERS;

20            THAT ALL SUCH ENTRIES WILL BE CORRECTED ON THE

21  FINAL CERTIFIED TRANSCRIPT, WHICH WILL BE DELIVERED TO ME

22  IN ACCORDANCE WITH STANDARD DELIVERY TERMS OR ON AN

23  EXPEDITED BASIS SHOULD I DESIRE FASTER DELIVERY;

24            THAT DUE TO THE NEED TO CORRECT ENTRIES PRIOR TO

25   CERTIFICATION, THIS ROUGH REALTIME DRAFT CAN ONLY BE USED

⬆                                                              2

1   FOR THE PURPOSE OF AUGMENTING COUNSEL'S NOTES AND CANNOT

2   BE USED OR CITED IN ANY COURT PROCEEDING OR DISTRIBUTED

3   TO ANY OTHER PARTIES.

4            I ALSO HEREBY ACKNOWLEDGE THAT I WILL BE BILLED

5   AN ADDITIONAL PRICE PER PAGE FOR THE REALTIME ROUGH DRAFT

6   TRANSCRIPT; AND, FURTHERMORE, THAT THIS CONSTITUTES MY

7   ORDER FOR A CERTIFIED COPY OF THE TRANSCRIPT.

8

9                      * * * * *

10           LAS VEGAS, NEVADA

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

↑                                                                                3

1      Q.    Good morning.

2      A.    Good morning.

3      Q.    Could you please state and spell your name for

4    the record?

5      A.    Debi Pike, D-e-b, as in boy, i, Pike, P-i-k-e.

6      Q.    Works for me.

7      A.    I never went by Alessi, so --

8      Q.    Good morning Miss Pike, my name is Mark

9    Bourassa.  I I represent a woman named Melinda James.

10   Otherwise known as what the heck is her other name.

11   Melinda Ellis.

12           MR. GILMORE:  Ellis.

13     Q.    It's too early in the morning.  Don't have the

14   coffee

15     A.    I know that you knew that.

16     Q.    Exactly.  I appreciate you appearing here

17   today.  Do you have an understanding in what capacity

18   you're appearing?

19     A.    Yes.

20     Q.    What is that?

21     A.    To speak about the position as a managing

22   partner.

23     Q.   Of?

24     A.   Of --

25     Q.   Profondo.

❦                                                              4

1     A.   Profondo

2     Q.   P-r-o-f-o-n-d-o.  Is that right?

3     A.   Yes.

4     Q.   I'm handing you a document.  Have you seen that

5  document before?

6     A.   Yes.

7     Q.   Have you seen that before?

8     A.   Yeah.

9     Q.   That's the deposition notice or the subpoena

10  notice?

11     A.   Yes.

12     Q.   For your appearance here today?  You've had an

13  opportunity to review it?

14     A.   I did, yeah.

15          MR. BOURASSA:  We'll mark that as the first

16  exhibit.

17          (Exhibit 1 was marked for identification.)

18     Q.   So before we get started with the detail of the

19  Profondo entity, I'd like to know a very little bit about

20  you.  You live in Las Vegas?

21     A.   I do.

22    Q.    What's your address here

23    A.    10927 sunset gardens drive.

24    Q.    How long have you lived in Las Vegas?

25    A.    Since '04.  Yeah.  Former school teacher, moved

⬆                                                                    5

1  from California in '04.

2    Q.    So you highest level of education would be what?

3    A.    Teaching credential.  So 4 years of bachelor's

4  in liberal arts and a teaching credential.

5    Q.    Are you currently employed?

6    A.    Yes.

7    Q.    What do you do?

8    A.    I run Nevada community management.

9    Q.    What does that entity do?

10    A.    We manage, service HOAs.  Yeah, so we have about

11  120 HOAs that we -- we're a full service management

12  company so we do the accounting, common area violations.

13  You name it, we do it.

14    Q.    So an HOA management company?

15    A.    Yes.

16    Q.    Just make sure we're on the same page.

17    A.    Yeah, HOA management company.

18    Q.    I used to do a lot of construction defect --

19    A.    Oh, okay.

20    Q.    -- litigation the plaintiff's side so I've had

21  my fill --

22      A.  Here in Vegas.

23      Q.  Yes.

24      A.  Yeah, okay.  I came right at the scandalous time

25      Q.  Yeah, all those night board meetings.

⬆                                                                    6

 1      A.  Yes, which I have three this week, so yeah.

 2      Q.  How long have you been with that entity?

 3      A.  Since well, MCM since 2013.  Been in the

 4  business since, 07, 6.  I had another company before MCM.

 5      Q.  All right.  Could you explain to me what

 6  Profondo is?

 7      A.  It's just an account.  It's an entity.  It's

 8  a -- what's the right word.  I can't think of the word.

 9  I know, but I can't think of the word.  It's like an

10  account.  I can't think of the word.  I'm sorry.

11      Q.  All right.  It's okay.  If you think about it --

12      A.  It's like a trust account I think.

13      Q.  We'll get there.  All right.

14      So could you tell me what your involvement with

15  Profondo has ever been?

16      A.  I was a managing partner on the agreement, and

17  that's, you know, my brother and I do business together

18  and it was one entity that I had an interest in.

19      Q.  What kind of interest did you have in the

20  entity?

21      A.   Like percentage?

22      Q.   Yes.

23      A.   3 percent.

24      Q.   3?

25      A.   Yes.

♠                                                              7

 1      Q.   When did that start?  How did you get involved?

 2      A.   I don't -- get involved in signing?  Like when

 3  did I sign the agreement?  Or when did I get involved

 4  in --

 5      Q.   When is the first time you were involved in

 6  anything with respect to Profondo?

 7      A.   Few years ago.  I think '16, '15.  I don't, I

 8  don't, I don't recall the exact year when I signed the --

 9      Q.   All right.

10      A.   -- agreement.

11      Q.   So were you involved in the initial formation of

12  the entity?

13      A.   Yeah.  Yeah, I mean I'm the managing partner, so

14  I mean it was discussed, and you know I wanted that

15  control over, over a family asset.

16      Q.   Maybe I should be clear.  The ownership and

17  interests and formation and all that can change over

18  time.

19     A.   Okay.

20     Q.   So what I'm asking first is do you know what

21 year the entity was formed?

22     A.   I believe '16.

23     Q.   And so you were involved in it at that point in

24 time?

25     A.   Yes.  I mean I -- yeah, whenever I needed to,

                                                                8

1 when we formed it, I signed it and that was it, and I can

2 look back and find it.

3     Q.   Do you have a recollection of what month?

4     A.   No.

5     Q.   Estimate?

6     A.   No.

7     Q.   Spring?  Fall?  Summer?

8     A.   No.  No recollection.

9     Q.   And then you wouldn't have had any involvement

10 with the entity before that time; is that correct?

11     A.   I don't recall.  I would have to refresh my

12 memory on that.

13     Q.   How would you refresh your memory?

14     A.   I'd have to go back in my documents or, you

15 know, I just know, I know I was managing partner and

16 that's all I remember.

17     Q.   Were you involved in forming an operating

18   agreement for this company?

19        A.   I believe that was all part of it.

20        Q.   Do you know when that happened?

21        A.   I don't recall.  Couldn't give you a date.

22        Q.   Can you tell me whether or not that operating

23   agreement was ever amended?

24        A.   No.

25        Q.   With respect to those items, an operating

♠                                                              9

1    agreement or an amended operating agreement, or the

2    articles of organization who took care of those things?

3         A.   Can you be more specific on what you mean?

4         Q.   Those are submitted to the secretary of state.

5         A.   Yes.

6         Q.   So who would voluntary submitted those to the

7    secretary of state?

8         A.   We have staff that works on the administrative

9    part of those things.  So I'm sure one of the staff.  I

10   don't recall honestly.  Could have been me, but I don't

11   recall.

12        Q.   Do you recall signing any documents on behalf of

13   Profondo?

14        A.   Yes.

15        Q.   What have you signed on behalf of Profondo?

16        A.   The -- I'd have to see them.  I couldn't name

17  them.  I'd have to be provided to see.

18      Q.   Who owns the other 97 percent of Profondo?

19      A.   David.

20      Q.   And what was David's role with respect to

21  Profondo?  I'm sorry.  Strike that.

22      When you say David, who do you mean?

23      A.   David Alessi.

24      Q.   And he's your brother?

25      A.   My twin brother.

⬆                                                              10

1       Q.   So with respect to Mr. Alessi's role with

2   Profondo what did he do?

3       A.   I don't, I don't know what you function that

4   would require.  He's just the, you know, 97 percent

5   holder.  I don't know all the languages for that.  So we

6   do a lot of business together and, you know, I might not

7   have the right language exactly what he did day to day.

8   I can't speak to that.

9       Q.   Sure.  Have you had your deposition taken

10  before?

11      A.   Yes.

12      Q.   On how many occasion?

13      A.   Like maybe three times.

14      Q.   I'm going to refresh your recollection with

15  respect to the rules of a deposition.

16     A.   Okay.

17     Q.   So we're clear and we're on the same page.

18     A.   Okay.

19     Q.   First and foremost as you can see right here,

20  there's a very nice court reporter sitting here, and

21  she's going to be writing down everything that we say.

22     A.   Yes.

23     Q.   She's already told us the most important rule,

24  which is don't speak over each other --

25     A.   Right.

🡑                                                        11

1     Q.   -- because she can't take down two people

2  talking at the same time.

3     A.   Right.

4          MR. GILMORE:  Those yeses and nos --

5          THE WITNESS:  Right.

6          MR. GILMORE:  -- are probably doing that.

7          THE WITNESS:  Yes.  Yes.

8          MR. GILMORE:  So don't --

9          THE WITNESS:  Gotcha.

10          MR. GILMORE:  -- you know, chime in with those

11  because she has to record those, and it's going to be a

12  really messy transcript.

13          MR. BOURASSA:  We'll get there.

14          MR. GILMORE:  I agree with Mr. Bourassa on that.

15      Q.   So that being said, you did take an oath, and

16   that oath is the same oath you would take in a court of

17   law if we had a judge sitting here and a jury over there

18   and everything else just like on television.  Do you

19   understand that?

20      A.   Yes.

21      Q.   Do you understand that oath that you took has

22   the same penalties of perjury as if we were in a court of

23   law?

24      A.   Yes.

25      Q.   So in the discussion here I'm going to ask you

⬆                                                              12

1   questions, and I'm going to expect you to answer them

2   truthfully and accurately.  Do you understand that?

3      A.   Yes.

4      Q.   If on occasion, and this has happened in the

5   past, my question doesn't make sense, or is confusing to

6   you, please just ask me to clarify it and I'd be happy to

7   do that.  Okay?

8      A.   Yes.

9      Q.   And with respect to your response, if I ask you

10   a question and you're able to answer it, I'm going to

11   assume that you knew what I was asking and that your

12   answer is accurate; is that fair?

13      A.   Yes.

14      Q.   You're doing a great job.   One of the other

15  important things which is to answer questions audibly,

16  that is yeses and nos and verbal explanations.   Body

17  language like shaking your head yes or no, or less than

18  understandable verbal responses like uh-huh or huh-uh

19  don't type very well in a transcript, and so it's

20  important that you answer audibly and clearly.   Okay?

21      A.   Yes.

22      Q.   You're doing a great job with that so far.

23      With respect to your testimony, I'm entitled to your

24  best testimony that you can give today.   So I understand

25  that some of the things year talking about may have

                                                              13

1  happened a few years ago, but I'm entitled to your best

2  recollection, your best testimony.   If you don't know,

3  it's okay, you can say you don't know.   If you don't

4  remember, it's okay, you can say you don't remember as

5  long as those are truthful and accurate statements.

6      But if you have a vague recollection or a vivid

7  recollection of an event, I'm entitled to that

8  testimony.

9      A.   Yes.

10      Q.   Do you understand that?

11      A.   Yes.

12      Q.   The reason that you're here today is because you

13   are a very minority listed member of Profondo LLC Nevada

14   limited liability corporation.  Excuse me.  Company.

15       A.   Yes.

16       Q.   Got to get my terms right too.

17       So did you review any documents in preparation for

18   your deposition?

19       A.   I reviewed them, but I just scanned over them

20   briefly.

21       Q.   What documents did you look at?

22       A.   That one.  The one that you showed me earlier.

23       Q.   The deposition?

24       A.   Exhibit 1.

25       Q.   Deposition notice?

⬆                                                          14

1       A.   Deposition notice, yes.

2       Q.   Okay.

3       A.   And there was an operating agreement.  There was

4   a few documents that Frank emailed me.

5       Q.   That who emailed?

6       A.   That I received.

7       Q.   Who sent those to you?

8       A.   Frank.

9       Q.   Frank.  Is that the gentleman sitting --

10      A.   Yes.

11      Q.   -- next to you?  Does he represent you as your

12    attorney?

13        A.   Yes.  Or no.

14             MR. GILMORE:  That would be news to me.

15             THE WITNESS:  No, he doesn't.  I'm sorry.  He

16    doesn't.  Sorry.  My mistake.

17        Q.   (By Mr. Bourassa) So he's not your attorney?

18        A.   No.

19        Q.   You haven't retained him.

20        A.   No, no, no.

21        Q.   You're not paying him --

22        A.   No.

23        Q.   -- to be here today?

24        A.   No, no, no.

25        Q.   What other documents did you review?

                                                         15

1         A.   That's -- I can't, that's it.  I just saw the

2     documents.  Just saw the operating -- I just clicked on

3     the documents briefly, so I can't say that I am well

4     versed with them.

5         Q.   I understand.  I'm just trying to clarify what

6     the scope of what you  --

7         A.   Yes.  I'm just, yeah --

8         Q.   So with respect to what was provided to you,

9     you, said the deposition notice and the operating

10    agreement?

11      A.   Yes.

12      Q.   Was that the operating agreement or the amended

13 operating agreement?

14      A.   I can't -- I wouldn't -- I don't know.

15      Q.   With respect to any other documents, can you

16 tell me what else you looked at?

17      A.   No.

18      Q.   Is that you don't know or you're unable to

19 recall?

20      A.   I'm unable to recall.

21      Q.   Who managed the financials of Profondo?

22      A.   I don't -- I don't know.

23      Q.   So you didn't write the checks?

24      A.   Not that I recall.

25      Q.   You didn't do the deposits?

❦                                                               16

1      A.   I can't say that I didn't or did.  Yeah, could

2 have.  You mean write, like physically write out?  I had

3 the power to, but I didn't -- I don't recall how many I

4 did or if I did any.  Honestly don't.

5      Q.   What was the business of Profondo?

6      A.   I don't -- I don't remember.

7      Q.   Do you know someone named Steve Luise?

8      A.   Yes.

9      Q.   Who is Steve Luise?

10     A.   He's an attorney.

11     Q.   How do you know him?

12     A.   He owns HOLG Lawyers Group.  He works in the

13  same building that I work in.

14     Q.   Does he have any relation to Profondo?

15     A.   One of the documents I saw had his name on it.

16  I don't remember what that was, that he testified to

17  something or something.  One of the documents I saw his

18  signature.

19     Q.   Is Mr. Luise your attorney?

20     A.   No.

21     Q.   Have you had any conversations with

22  Mr. Luise at any point in time?

23     A.   Yes.

24     Q.   About what?

25     A.   He's an HOA attorney, so I go to him for you

⬆                                                            17

1   know, my managing questions and things like that.  He

2   owns a collection company.  He's --

3      Q.   All right.  Have you had any conversations with

4   Mr. Luise with respect to Profondo or this case with miss

5   James?

6      A.   No.

7      Q.   Do you know who Ryan Kerbow is?

8      A.   Yes.

9      Q.   Who is Ryan Kerbow?

10     A.   He was an attorney.

11     Q.   And how do you know Mr. Kerbow?

12     A.   He worked for Alessi and Koenig.

13     Q.   Is he your attorney?

14     A.   No.

15     Q.   Have you ever had any conversations with

16  Mr. Kerbow about this particular case or Profondo?

17     A.   No.  I mean I could have back then, but not

18  recently.

19     Q.   Back then meaning when?

20     A.   When he was I believe working for Alessi back

21  then, so -- but I don't remember.

22     Q.   What date range are you talking about?

23     A.   When the LLC was formed.  I haven't had any

24  communications with Ryan in a few years, so --

25     Q.   Then back to David Alessi, what is your

                                                      18

1  relationship with him with respect to Profondo?

2      A.   Just a partner.  We partner on several issues,

3  on several entities, you know, family assets and things

4  like that.  It's not uncommon for me to sign and partner

5  with him in different, you know, projects and things like

6  that, so --

7      Q.   With respect to those family businesses --

8      A.    Uh-huh.

9      Q.    -- what are you talking about?  Profondo is one

10  of those.

11     A.    Right.  Not uncommon for me to be a partner or

12  signer.

13     Q.    Who is in charge of the family businesses?  Is

14  that David?

15           MR. GILMORE:  Object.  Vague.

16           MR. BOURASSA:  Sure.

17           MR. GILMORE:  Use of the term in charge?

18           MR. BOURASSA:  Okay.

19     Q.    Do you understand what I mean?

20     A.    Yes.

21           MR. GILMORE:  Sorry.

22           MR. BOURASSA:  One other thing.  I'll object

23  from time to time on behalf of my client.  It doesn't

24  mean you don't answer the question.  It just means we're

25  doing lawyer things on the record.

                                                          19

1            THE WITNESS:  Got it.

2            MR. GILMORE:  He can correct me if he thinks I

3   misstated that, but that's kind of how I believe it's --

4            THE WITNESS:  Can you clarify?

5      Q.    (By Mr. Bourassa) Sure.  Who makes the decisions

6   with respect to what the family businesses do?

 7     A.   We both do if I'm on it.

 8     Q.   So with respect to Profondo as an example, did

 9 you invest in that entity?

10     A.   What do you mean by invest?

11     Q.   Did you contribute any money to that entity at

12 any point in time?

13     A.   I don't recall.

14     Q.   Did Mr. David Alessi contribute any money to

15 that entity at any point in time?

16     A.   I can't speak for him.

17     Q.   So you don't know?

18     A.   No, I don't know.

19     Q.   With respect to the Profondo entity, are you

20 aware that it has been revoked by the Nevada secretary of

21 state?

22     A.   I don't know to be honest.  I think I might have

23 heard that.

24     Q.   Do you know what it means to be revoked by

25 the --

                                                          20

 1     A.   Yes.

 2     Q.   -- Nevada secretary of state?  What does that

 3 mean?

 4     A.   That -- well, in my business it means if you

 5 don't do a filing in time, it's revoked.

6    Q.   Is Profondo LLC still in business?

7    A.   I don't think so.  I'm not sure.  I mean I'm not

8  sure with respect to --

9    Q.   Does Profondo LLC have any current assets?

10    A.   I don't know.  I haven't revisited any of this.

11  This is, like for a long time.

12    Q.   With respect to any period of time, are you

13  aware of any assets that Profondo LLC has ever owned?

14    A.   Any assets.

15    Q.   She's going to ask you to speak up?

16    A.   I know.  I'm thinking.  I'm not 100 percent sure

17  to answer that, so I don't want to guess.

18    Q.   Do you have in an estimate?

19    A.   No.

20    Q.   Do you have any area that maybe it was in

21  marijuana cultivation or brewing or it was in some other

22  area of business?  You don't know?

23    A.   No.  No.

24    Q.   As you sit here today, you don't know what

25  Profondo LLC --

&                                                           21

1    A.   I just thought, yeah, managing partner and

2  that's all I can bring today, yeah.

3    Q.   Okay.

4    A.   I don't know all the specifics, so --

5      Q.   Has David Alessi ever spoken to you regarding a

6   lawsuit by Melinda James also known as Melinda Ellis?

7      A.   I knew about it back then when it first came

8   out, came to be.

9      Q.   What was the subject of conversation?  What was

10   discussed?

11      A.   Just very in a nutshell, I don't know too much

12   about it.  Just that it was a case up in Reno that he was

13   going through.  I really don't know the specifics.

14      Q.   Do you know anything about what happened with

15   that case?

16      A.   Not specifically.

17      Q.   Generally speaking?

18      A.   That was so far ago.  I'm trying to be very

19   literal, but I don't -- I mean I just -- not

20   specifically, but I just know that there was -- I think

21   the woman was like 92.  Is that the one?  No, I don't

22   know.  I really wouldn't be able to explain it in detail,

23   but --

24      Q.   What did you do to prepare for today's

25   deposition?

✦                                                              22

1      A.   Not -- just reading that.  Not much.

2      Q.   Who have you spoken to about the deposition

3   today?  Excuse me.  Let me rephrase that.

4        To whom have you spoken about this deposition?

5        A.   Well, my staff.  I tell people I have a

6    deposition today, but I haven't spoken to anybody about

7    it as far as --

8        Q.   Did you have any conversations with Mr. Gilmore

9    or anyone from his office?

10       A.   To confirm the appointment, yes.

11       Q.   What about the -- I'm sorry.  Go ahead.  I cut

12   you off.  It's my bad.

13       A.   Yeah.  No.  We just talked about like the dos

14   and don'ts of the deposition, and he sent me some

15   documents.

16       Q.   Have you spoken to Mr. Luise or Mr. Kerbow about

17   this deposition?

18       A.   No.

19       Q.   Have you spoken to David Alessi --

20       A.   No.

21       Q.   -- about this deposition?  Have you done

22   anything else or spoken to anyone else to prepare for

23   this deposition today?

24       A.   No.

25       Q.   Did Mr. Alessi ever approach you with respect to

❧                                                            23

1    a judgment in the Melinda Ellis, Melinda James case

2    against Alessi?

3    A.   Can you say that again?

4    Q.   Did Mr. Alessi ever speak to you about a

5  judgment in the Melinda Ellis versus Alessi Koenig case?

6    A.   Yes.

7    Q.   What was that conversation?

8    A.   It wasn't a specific.  It was just I know about

9  it.  I don't -- yeah, it's been several years, so it's,

10  you know, I wasn't sure if it was over, not over, and

11  then I got this.

12    Q.   So it's fair to say you don't know any specifics

13  about the judgment.  Is that accurate?

14    A.   No, just that there was one.

15    Q.   Do you know anything about the appeal of that

16  judgment?

17    A.   Not -- no, I don't.  We haven't really -- I mean

18  I've been -- yeah, no.  And if I did, I don't remember.

19  I mean there's been a lot -- yeah.

20    Q.   With respect to the documentation for Profondo,

21  are there any corporate records?

22    A.   I'm sure there might be.  I don't know.

23    Q.   Who would have those if they existed?

24    A.   I don't know.

25    Q.   Did you as a member of the entity engage in any

                                                          24

1  meetings with respect to the operations of the company?

2      A.   I don't recall.

3      Q.   Are there bank records with respect to the

4  company?

5      A.   I don't recall.  I'm a managing partner, signer,

6  you know.  I know I had some power there as far as if we

7  needed to, but all these specifics I don't recall, so I

8  just --

9      Q.   What have you ever signed on behalf of in terms

10 of the power that you have on behalf of Profondo?

11     A.   They're in my email.  I'd be able to look, but I

12 couldn't list them off.  The agreement I mean with

13 Profondo.

14     Q.   By that you mean the operating agreement?

15     A.   Yes, the one I have the 3 percent interest in.

16 I'm sorry.  I didn't have time to prepare.  This was all

17 very fast, so I --

18     Q.   Are you not ready to go forward and give your

19 best testimony today?

20     A.   I signed what you saw, what you know that I

21 signed, the operating agreement.  So that's, you know,

22 why I'm here.  I'm to verify that.

23     Q.   Have you ever -- I'm sorry.

24     A.   Go ahead.  I'm sorry.  My bad.  Go ahead.

25     Q.   Have you ever received any proceeds from

1  Profondo LLC?

2      A.   I don't recall.

3      Q.   What's the nature of your other business

4  interests that you share with David Alessi?

5      A.   Can you be more specific?

6      Q.   Sure.  What other companies or deals are you

7  involved in with David Alessi?

8      A.   I can't recall at the moment.

9      Q.   What's Montego Bay trust?

10     A.   A trust.  I'm not familiar.  I mean I know the

11 name, but --

12     Q.   Do you have an understanding of your role with

13 respect to that entity?

14     A.   Not specifically right now, no.

15     Q.   Is Mr. Alessi involved in that entity?

16     A.   I don't know.

17     Q.   Does Mr. Alessi have the ability to bind the

18 Montego Bay trust?

19     A.   This is -- I don't know.

20     Q.   Does Mr. Alessi have the ability to bind

21 Profondo LLC?

22     A.   I don't know.

23     Q.   With respect to the Nevada secretary of state

24 documents, do you recall submitting any of the annual

25 list of managers to the secretary of state of Nevada for

1  Profondo?

2      A.   I don't recall.

3      Q.   Do you know who prepared the annual list of

4  managers for the Nevada secretary state --

5      A.   No.

6      Q.   -- for the Profondo entity?

7      A.   No.

8      Q.   Is there a reason why in May 15, 2015, the

9  signature of the, on the annual list for Profondo LLC was

10 David Alessi?  Is there a reason why he would be on

11 there.

12     A.   For Profondo?

13     Q.   For Profondo.

14     A.   Because he's 97 percent.

15     Q.   And he's titled as owner.  Would that be an

16 accurate description --

17     A.   Part.

18     Q.   -- of his role?

19     A.   Part, yeah.

20          MR. BOURASSA:  I don't have any questions for

21 you beyond that.

22          THE WITNESS:  Okay.

23          MR. GILMORE:  I do.

24     Q.   If I said to you to describe what you think this

25   term means -- I'll give you the term, and then I'll ask

⬧                                                                    27

1    you to describe it for me, David Alessi has authority to

2    bind the ABC trust, what does bind mean?

3           MR. BOURASSA:  Object.

4           MR. GILMORE:  What's your understanding of what

5    bind means under that context?

6           MR. BOURASSA:  Object to form, but you can

7    answer.

8           THE WITNESS:  Binding, it's binded.  Like it's a

9    sure thing, like binding.  It's legitimate.  It holds.

10     Q.   (By Mr. Gilmore) Okay.  Do you know the

11   difference between a limited liability company and a

12   corporation?

13     A.   No.  Not that I'd be able to define.

14          MR. GILMORE:  I have no further questions.

15          THE WITNESS:  Okay.

16          MR. BOURASSA:  That's all.  Thank you.

17
18

19

20

21

22

23

24

25

⬆

# EXHIBIT "12"

## Defendant David Alessi's Deposition

# EXHIBIT "12"

## Defendant David Alessi's Deposition

DAVID ALESSI                                    December 12, 2019
JAMES vs ALESSI                                                1

```
 1                    DISTRICT COURT

 2                CLARK COUNTY, NEVADA

 3

 4   MELINDA JAMES, an              )
     individual,                    )
 5                                  )
                    Plaintiff,      )
 6                                  )
     vs.                            ) CASE NO.
 7                                  ) 2:18-cv-01398-JAD-CWF
                                    )
 8   DAVID ANTHONY ALESSI, an       )
     individual,                    )
 9                                  )
                    Defendant.      )
10                                  )
     _____ )
11

12

13

14
              DEPOSITION OF DAVID ALESSI
15
          Taken at The Bourassa Law Group
16        at 2350 West Charleston Boulevard
                     Suite 100
17            Las Vegas, Nevada 89102

18
            On Thursday, December 12, 2019
19                   at 1:10 p.m.

20

21

22

23

24

25   Reported by:  Jualitta Stewart, CCR No. 807, RPR
```



1   APPEARANCES:

2   For the Plaintiff, Melinda James:

3                           MARK J. BOURASSA, ESQ.
                            The Bourassa Law Group
4                           2350 West Charleston Boulevard
                            Suite 100
5                           Las Vegas, Nevada 89102
                            (702) 851-2180
6

7   For the Defendant, David Alessi:

8                           FRANK GILMORE, ESQ.
                            Robinson Sharp Sullivan & Brust
9                           71 Washington Street
                            Reno, Nevada 89503
10                          (775) 329-3151

11

12

13

14
                            --oOo--
15

16

17

18

19

20

21

22

23

24

25



DAVID ALESSI                                December 12, 2019
JAMES vs ALESSI                                            3

```
1                    I N D E X

2

3   WITNESS                                    PAGE

4   DAVID ALESSI

5     Examination by Mr. Bourassa                4

6

7                    --o0o--

8

9

10              E X H I B I T S

11

12  PLAINTIFF'S                                PAGE

13   Exhibit 1 - Notice of Taking the Deposition    5
                  of Alessi & Koenig
14
     Exhibit 2 - Subpoena of the Person Most        5
15                Knowledgeable for Alessi &
                  Koenig, LLC
16
     Exhibit 3 - Notice of Taking the Deposition    5
17                of David Anthony Alessi

18   Exhibit 4 - Stipulation Regarding Judgment     37
                  Enforcement
19
     Exhibit 5 - First Amended Complaint for        50
20                Breach of Contract and Fraud

21   Exhibit 6 - Defendant David Anthony Alessi's   50
                  Answer to Plaintiff's First
22                Amended Complaint

23

24                    --o0o--

25
```



```
 1                    LAS VEGAS, NEVADA;

 2           Thursday, December 12, 2019; 1:10 P.M.

 3

 4                     DAVID ALESSI,

 5   having been first duly sworn, testified as follows:

 6

 7                     EXAMINATION

 8   BY MR. BOURASSA:

 9       Q.    Good afternoon.  My name is Mark

10   Bourassa.  I'm the attorney for Melinda James in

11   this matter.

12           Would you please state and spell your

13   name for the record.

14       A.    David Alessi, A-l-e-s-s-i.

15       Q.    Good afternoon, Mr. Alessi.  I guess we

16   don't care.  I'm going to hand you three documents.

17           Do you recognize those?

18       A.    Yes.

19       Q.    And so you understand that those are the

20   notices for the appearance of, first, a

21   representative of Alessi & Koenig, the law firm.

22           Second, the person most knowledgeable of

23   Alessi.

24           And third, you personally for appearing

25   here today for a deposition; is that right?
```



1  could extend to you.

2      Q.    With respect to the second affirmative

3  defense, the answer states, "Plaintiff failed to

4  mitigate her damages."

5          What factual basis or what facts can you

6  offer that would support your affirmative defense

7  that plaintiff failed to mitigate her damages?

8          MR. GILMORE:  Same objection.

9          THE WITNESS:  Plaintiff could have

10  accepted the offer of all the files of the company.

11  You had a judgment against the company, the company

12  was offered to you in exchange for that judgment,

13  and the plaintiff could have mitigated her damages

14  by accepting that offer.

15  BY MR. BOURASSA:

16      Q.    And I would have had 500 depositions to

17  attend or a thousand or 2000 or however many it is

18  now, right?

19          Anything else to support the mitigation

20  of damages defense?

21      A.    That's the only thing I can think of off

22  the top of my head.

23      Q.    Third affirmative defense says,

24  "Plaintiff's claims alleged in the complaint are

25  barred by the statute of limitations."



 1          What facts can you offer that support

 2   that her allegations are barred by the statute?

 3        A.    I would just defer to the statute of

 4   limitations and whatever the rules are there.

 5        Q.    What statute of limitations are you

 6   applying?

 7             MR. GILMORE:  Calls for a legal

 8   conclusion.

 9             THE WITNESS:  Yeah.  I'm not a Nevada

10   attorney, I wouldn't feel comfortable answering

11   those questions.

12   BY MR. BOURASSA:

13        Q.    So do you have any facts to support your

14   third affirmative defense?

15        A.    I don't.

16        Q.    With respect to the fourth affirmative

17   defense it states, "To the extent defendant's

18   actions violated the law, such actions were the

19   result of a bona fide error notwithstanding

20   reasonable procedures designed to avoid such error."

21             What is the bona fide error -- I'm sorry.

22             What facts can you offer to support that

23   there was a bona fide error with respect to this

24   claim?

25        A.    My knowledge that I personally operated



DAVID ALESSI                                    December 12, 2019
JAMES vs ALESSI                                                    75

1  in good faith with you and your client throughout
2  this process.  It was not purposely done in bad
3  faith to try to hurt you or your client.
4      Q.    What reasonable procedures were in place
5  to prevent such a mistake?
6      A.    I wasn't, as I testified earlier, a part
7  of these negotiations as much as you might think I
8  was.  So I'm not -- I'm not sure.
9      Q.    Do you have any other facts to support
10 the assertion of a bona fide error or procedures
11 designed to support the error?
12     A.    No.
13     Q.    With respect to your fifth affirmative
14 defense, your answer states, "Plaintiff's claims may
15 be precluded, in whole or in part, to the extent
16 plaintiff's purported damages, if any, were caused
17 by plaintiff's acts or omissions."
18          Do you have any basis to believe that
19 Ms. Ellis or Ms. James, depending which complaint
20 we're dealing with, took any acts or omissions that
21 have caused her own damages with respect to this
22 case?
23     A.    Well, she could have paid her assessments
24 on time.
25     Q.    That's prejudgment.  With respect to her



1 | damages postjudgment in attempting to collect in the

2 | subject matter of the current action, do you have

3 | any facts to support that she had any acts or

4 | omissions that would excuse your liability?

5 |     A.    Again, as a non-Nevada attorney, I don't

6 | feel comfortable opining on these affirmative

7 | defenses as they relate to Nevada law.  I would just

8 | defer to my counsel.

9 |     Q.    I'm not asking you to opine on them, I'm

10 | asking you for factual or evidentiary support for

11 | them.

12 |     A.    Again, I would defer to my Nevada

13 | counsel.

14 |     Q.    So with respect to the fifth affirmative

15 | defense, you have no further facts to offer?

16 |     A.    Correct.

17 |     Q.    With respect to the sixth affirmative

18 | defense, "Plaintiff's claims may be precluded, in

19 | whole or part, to the extent plaintiff's purported

20 | damages, if any, were caused by third parties over

21 | whom the defendant has no control or authority."

22 |     A.    I have nothing to add to that.

23 |     Q.    With respect to the seventh affirmative

24 | defense, "Plaintiff lacks Article III standing to

25 | pursue the allegations in the complaint."



1      A.    Again, I would defer to my Nevada

2   counsel.

3      Q.    So you have no facts to offer with

4   respect to that affirmative defense?

5      A.    I don't.

6      Q.    With respect to the eighth affirmative

7   defense, "Plaintiff's and/or claims" -- that's a

8   little difficult.

9            "Plaintiff's and/or claims are barred by

10  release, contract provision, waiver, unclean hands,

11  laches, estoppel and/or res judicata."

12           Do you have any facts to support that

13  affirmative defense?

14     A.    I would again defer to my Nevada counsel.

15     Q.    And beyond that, you have nothing -- no

16  facts or evidence to offer; is that right?

17     A.    Right.

18     Q.    And ninth affirmative defense,

19  "Plaintiff's contract claim fails for lack of

20  consideration and failure of consideration."

21           Do you have any facts to offer with

22  respect to the ninth affirmative defense?

23     A.    I would again just defer to my Nevada

24  counsel.

25     Q.    And you have no other facts to offer



1    beyond that?

2         A.    Correct.

3              MR. BOURASSA:  Take a break.  I'm almost

4    done.

5                   (A recess was taken.)

6    BY MR. BOURASSA:

7         Q.    One of the -- couple of things from your

8    March 18, 2016 affidavit that I had some questions

9    about.

10             Paragraph 10 you say, "When the title

11   company that was hired to prepare the security

12   instrument asked for written confirmation that

13   Profondo agreed with respect to all of this."

14             What title company was that?

15        A.    I don't recall.

16        Q.    Who would, anyone?

17        A.    No.

18        Q.    Okay.  And then it's your testimony that

19   Ms. Pike refused to encumber Profondo; is that

20   right?

21        A.    That's my recollection, yes.

22        Q.    Excuse me.  Encumber the property.

23        A.    Well, that and we didn't have a finalized

24   agreement with you or your client.  But both of

25   those things.



1                    REPORTER'S DECLARATION

2    STATE OF NEVADA        )
                            ) ss
3    COUNTY OF CLARK        )

4              I, Jualitta Stewart, a duly commissioned

5    Notary Public, Clark County, State of Nevada, do

6    hereby certify:

7              I reported the taking of the deposition

8    of the witness, DAVID ALESSI, commencing on

9    Thursday, December 12, 2019, at the hour of

10   1:10 p.m.

11             That prior to being examined, the witness

12   was by me duly sworn to testify to the truth, the

13   whole truth, and nothing but the truth.

14             That I thereafter transcribed my said

15   shorthand notes into typewriting and that the

16   transcript is a complete, true, and accurate

17   transcription of said shorthand notes.

18             I certify that I am not a relative or

19   employee of any party involved in said action, nor a

20   person financially interested in the action.

21             IN WITNESS WHEREOF, I have hereunto set

22   my hand and affixed my official seal in my office in

23   the County of Clark, State of Nevada, this 26th day

24   of December, 2019.

25             JUALITTA STEWART, RPR, CCR No. 807



# EXHIBIT "13"

## Order From Prior Action
## Dated September 2018

# EXHIBIT "13"

## Order From Prior Action
## Dated September 2018

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

MELINDA ELLIS,

        Plaintiff,

    v.

ALESSI TRUSTEE CORPORATION;
DAVID ANTHONY ALESSI; and ALESSI
& KOENIG LLC,

        Defendants.

Case No. 3:09-cv-00428-LRH-WGC

ORDER

This is an order in response to plaintiff Melinda Ellis's ("Ellis") February 26, 2016

motion for an order to show cause related to defendant Alessi & Koenig, LLC's ("A&K's")

failure to abide by a stipulated stay of judgment. ECF No. 236.

I.    **Facts and Procedural History**

This action has an extensive litigation history. In brief, Ellis purchased real property

within the Arrowcreek subdivision in Washoe County, Nevada. Arrowcreek is governed by a

homeowner's association ("HOA") which charges dues to all residents that live within the

subdivision. Ellis became delinquent and defaulted on her HOA dues. Defendants

Alessi Trustee Corporation ("ATC")[1] and A&K,[2] acting as the various participants in collecting

delinquent HOA dues on behalf of the HOA, sent multiple letters to Ellis regarding the debt.

---

[1] Defendant ATC is a company located in Las Vegas, Nevada, and primarily operates as an adjustment and collection services business which works with Homeowner's Associations to collect on delinquent HOA dues.
[2] Defendant A&K is a law firm in the State of Nevada which acted as attorneys for the Homeowner's Associations when delinquency notices were sent out.

1

P000016

Ellis did not pay her back HOA dues. Eventually, a notice of default was recorded on her property along with a notice of trustee's sale.

On July 15, 2009, after the notice of trustee's sale, Ellis filed a complaint against defendants ATC, A&K, and David A. Alessi ("Alessi")[3] alleging three causes of action: (1) breach of fiduciary duty; (2) unfair debt collection practices in violation of 15 U.S.C. § 1692; and (3) racketeering. ECF No. 1, Ex. 1. Individual defendant Alessi filed a motion to dismiss (ECF No. 8) which was granted by the court after a stipulation between the parties (ECF No. 52).

A jury trial was held on Ellis's claims against defendant ATC and A&K in early January 2015. Ultimately, at the close of trial, the jury returned a verdict in favor of Ellis and awarded her $233,000.00 in damages against both ATC and A&K jointly. ECF No. 196. The court then granted Ellis's motion for attorney's fees and costs and awarded her approximately $145,000 in fees and costs. ECF No. 215. Judgment against ATC and A&K was entered in the amount of $381,091.04 plus post-judgment interest. ECF No. 218.

Following the jury verdict and judgment, the parties reached a stipulated agreement regarding a stay of the judgment. ECF No. 230. Under the parties' stipulation (1) Ellis would refrain from enforcing the judgment; (2) defendant A&K would execute a promissory note in the amount of $383,990.07 in favor of Ellis; (3) defendant A&K would grant Ellis a first priority security interest in the form of a deed of trust against real property identified as 9512 West Flamingo Road, Suite 100, Suite 101, and Suites 102-103; and (4) defendant A&K would make monthly payments to Ellis until the promissory note was repaid. *Id*. The parties' stipulation was approved by the court on December 16, 2015. ECF No. 235.

Since the stipulation, A&K has only made three payments to Ellis, has not granted a first priority security interest in the identified real property, and has indicated on multiple occasions to Ellis's counsel that it would not be granting any security interest as required under the stipulation. In response to A&K's continued conduct, Ellis filed a motion for an order to show cause in February 2016 (ECF No. 236), which was granted by the court (ECF No. 245).

---

[3] Individual defendant Alessi is the owner of ATC and the managing and founding partner of A&K.

2

P000017

In that order, A&K was ordered to show cause within fourteen (14) days as to why A&K was not complying with the parties' stipulation. *Id*. A&K did not respond to that order. Instead, on December 13, 2016, A&K filed for bankruptcy.

On August 22, 2017, Ellis filed a motion for a status check as no further action had been taken by either defendant ATC or A&K, and defendant A&K was still involved in bankruptcy proceedings. ECF No. 248. The court granted Ellis's motion and ordered defendants to respond within ten (10) days why they should not be held in contempt of court for violation of the court's orders. ECF No. 50. On September 25, 2017, dismissed defendant Alessi filed a response to the court's order (ECF No. 252) to which Ellis responded (ECF No. 255). Neither defendant ATC nor A&K filed any response to the court's order.

## II.    Discussion

The issue before the court is how to proceed on Ellis's motion for an order to show cause which was granted by the court. It is undisputed that ATC and A&K have not responded to any of the court's orders over the last two years, even those prior to A&K's initiation of bankruptcy proceedings. If is further undisputed that A&K did not comply with the terms of the stipulated stay of judgment. Based on the record before the court and the clear indication that there was either fraud on behalf of defendants in drafting the stipulated stay of judgment or a mutual mistake by the parties as to the most basic components of the stipulated stay, the court finds that the most appropriate course of action is to vacate the stipulated stay (ECF No. 235) and allow Ellis to proceed in enforcing the judgment against both ATC and A&K.

From the record before the court it appears that defendants, including dismissed defendant Alessi as the manager/managing partner of A&K and ATC, negotiated the stipulated stay negligently, at a minimum, if not fraudulently. It is clear that defendants failed to secure the consent of the property owner of the identified properties, Profondo, LLC ("Profondo"), a Nevada limited liability company, to use the properties as security for the promissory note as defendants had claimed when initially negotiating the stipulation. In fact, Alessi now concedes that the properties which were intended to be pledged as security were not actually owned by any of the defendants at the time of the stipulation.

P000018

1      It also appears to the court that the stipulated stay was negotiated and drafted in such a

2   manner as to make it impossible for A&K to comply with the agreement. In his response,

3   Alessi claims that A&K reasonably believed that Profondo would be willing to pledge the

4   properties to secure the A&K note, but that ultimately A&K was informed after the stipulation

5   that Debra Pike, the manager of Profondo, was unwilling to consent to the pledge and refused

6   to transfer the properties through no fault of A&K or the other defendants. However, this

7   concession is disingenuous as Alessi was the manager and registered agent of Profondo for

8   many years during the relevant time period. Further, for the filing year March 2015 through

9   March 2016, the relevant time period of the parties' stipulation, Alessi signed Profondo's

10  Nevada Secretary of State filing as Owner. Further, it has come to the court's attention that

11  Debra Pike may also be related to Alessi. Thus, it appears that Alessi himself at least had

12  control of the properties and the ability to pledge them as security on behalf of A&K had

13  the stay been negotiated in good faith. Instead, Alessi and defendants negotiated and drafted the

14  stay for the sole purpose of frustrating Ellis's ability to collect on the judgment.

15     Moreover, the evidence in this action establishes that Ellis entered into the stipulated

16  stay of her enforcement of the judgment with the expressed expectation that the first deed of

17  trust on the identified properties could be recorded and that A&K, through Alessi, had full

18  power to comply with the negotiated stay of judgment. Therefore, based on the above record

19  and the other evidence and documents submitted to the court, the court finds good cause exists

20  to vacate the stipulated stay approved by the court (ECF No. 235) and lift the stay of judgment

21  entered in this case.

22     IT IS THEREFORE ORDERED that the approved stipulation to stay judgment (ECF

23  No. 235) is VACATED in accordance with this order, and the stay of judgment is LIFTED.

24     IT IS SO ORDERED.

25     DATED this 7th day of September, 2018.

26

27  LARRY R. HICKS
    UNITED STATES DISTRICT JUDGE

28

4

P000019